Todd M. Friedman (216752)
Adrian R. Bacon (280332)
**Law Offices of Todd M. Friedman, P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 877 206-4741
Fax: 866 633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com

Attorneys for Plaintiffs,

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN CAWTHORNE, AND FRANCISCO XAVIER VALDEZ individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>RUSH TRUCK CENTERS OF CALIFORNIA, INC., RUSH ENTERPRISES, INC, RUSH ADMINISTRATIVE SERVICES, INC, AND RUSH TRUCK LEASING, INC.<br><br>                    Defendants. | **CASE NO.: 5:17-cv-1541 (JGB) (SPx)**<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Assigned to the Hon. Jesus G. Bernal<br><br>**DATE:**   MARCH 18, 2019<br>**TIME:**   9:00 A.M.<br>**CTRM:**    1<br><br>[Filed and Served Concurrently with Declaration of Adrian R. Bacon; Declaration of Brian Cawthorne; Declaration of Francisco Xavier Valdez; [Proposed] Order] |

---

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

5155805v.1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, March 18, 2018 at 9:00 a.m., before the United States District Court, Central District of California, Courtroom 1, 3470 Twelfth Street, Riverside, CA, 92501 plaintiffs Brian Cawthorne and Francisco Xavier Valdez ("Plaintiffs") will move this Court for an order granting preliminary approval of the class action settlement and certification of the settlement class as detailed in Plaintiffs' Memorandum of Points and Authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: February 17, 2019                    **The Law Offices of Todd M. Friedman, PC**

By:  _/s/ Adrian R. Bacon_
Adrian R. Bacon
_Attorneys for Plaintiffs_

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
1

5155805v.1

1

## I.    <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3</u>

2

Plaintiffs' counsel certifies that prior to filing the instant motion, the parties,

3

through counsel, met and conferred pertaining to the subject matter of the instant

4

motion. Defendants do not oppose this motion.

5

6

Date: February 17, 2019                    **The Law Offices of Todd M. Friedman, PC**

7

By:  _/s/ Adrian R. Bacon_

8

Adrian R. Bacon
*Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

TABLE OF AUTHORITIES ........................................................................III

MEMORANDUM OF POINTS & AUTHORITIES ...........................................1

I.     Introduction ...........................................................................1

II.    Statement of Facts ..................................................................5

    A.    Proceedings to Date.................................................5

    B.    Statement of Facts ..................................................6

        1. The Settlement Class...........................................6

            a. The Settlement Class..............................6

            b. Class Membership Determination...........7

        2. Settlement Payment.............................................7

        3. Monetary Benefit to Class members and Class Notice ........................................................................7

        4. Scope of Release.................................................8

        5. Opportunity to Opt Oiurt and Object ...............9

        6. Payment of Notice and Administrative Costs.................9

        7. Class Rpresentative's Application for Incentive Award ........................................................................9

        8.  Class Counsel's Application for Attorneys' Fees, costs and Expenses.....................................10

        9. Uncashed Checks ...........................................10

III.    Argument ...........................................................................10

    A.    The Legal Standards for Preliminary Approval of a Class Action Settlement...............................................8

    B.    Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating this Case ....................11

    C.    Defendant's Agreement to Finance the Common

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

i

5155805v.1

Benefit Fund Provides a Fair and Substantial
Benefit to the Class ................................................................ 13

D. The Settlement was Reached as the Result of
Arms-Length Negotiation, Without Collusion,
with the Assistance of the Mediator ........................................ 14

E. The Settlement Experienced Counsel Have
Determined that the Settlement is Appropriate and
Fair to the Class ...................................................................... 14

F. The Court Should Preliminarily Certify the Class
for Purposes of Settlement ...................................................... 15

G. The Proposed Class is Numerous. ........................................... 15

H. The Commonality Requirement is Satisfied,
Because Common Questions of Law and Fact
Exist. ....................................................................................... 16

I. The Typicality Requirement is Met. ........................................ 17

J. The Adequacy Requirement is Satisfied. ................................ 18

K. Common Questions Predominate, Sufficient to
Certify a Class for Settlement Purposes Only. ........................ 18

L. Class Treatment for Settlement Purposes is
Superior to Individual Resolutions. ........................................ 19

M. The Proposed Class Notice is Consistent with
Ninth Circuit Requirements and Provides
Adequate Notice for Claims, Objections and Opt
Outs. ........................................................................................ 20

N. The Court Should Preliminarily Certify the Class
for Purposes of Settlement. ..................................................... 22

O. The Court Should Appoint KCC, Inc. as the
Settlement Administrator ......................................................... 23

P. Final Approval Hearing Should be Scheduled. ....................... 23

IV. Conclusion .......................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997)................................20

*Barani v. Wells Fargo Bank, N.A.*, Case No. 12CV2999-GPC KSC, 2014 WL
   1389329, at *10 (S.D. Cal. Apr. 9, 2014)............................................21

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)............................10

*Culinary/Bartenders Trust Fund*, 244 F.3d at 1163.  *See also, Valentino v. Carter-
   Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) .................................19

*Davis v. Four Seasons Hotel Ltd.*, 277 F.R.D. 429, 435 (D. Hawaii 2011)............15

*Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL
   133741, at *20 (M.D. Fla. Jan. 27, 1998) ..........................................20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ................... passim

*Harik v. Cal. Teachers Ass'n,* 326 F.3d 1042, 1051 (9th Cir. 2003)......................15

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)
   ........................................................................................15

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y.
   1995)..................................................................................9

*In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008)
   ..............................................................................14, 15, 18

*Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) .........................................10

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)..........22

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)................11

*Lo v. Oxnard European Motors, LLC*, 11CV1009 JLS MDD, 2012 WL 1932283,
   at *1 (S.D. Cal. May 29, 2012) .....................................................21

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152, 1162 (9th Cir. 2001)...............................................18

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) ................22

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

iii

5155805v.1

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ...........20

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ......9, 10

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F.

    Supp. 364, 372 (E.D. Pa. 1970).........................................................................10

*Schaffer v. Litton Loan Servicing, LP*, CV 05-07673 MMM JCX, 2012 WL

    10274679, at *8 (C.D. Cal. Nov. 13, 2012) .........................................................21

*Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) ............................................20

*Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003) .......................................18

*Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) .....20

*Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993) ....22

*Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir.

    1989).........................................................................................................................9

*Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987)............................17

*West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971)....................10

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001)

    (citation omitted), amended, 273 F. 3d 1266 (9th Cir. 2001) .............................18

**Statutes**

28 U.S.C. § 1715.......................................................................................................1

Fed. R. Civ. P. 23 ........................................................................8, 17, 18, 21

**Other Authorities**

4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq.*, and § 13.64 (4th

    ed. 2002 and Supp. 2004) ......................................................................................9

5 James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.) .......10

*Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*")

    § 21.63, *et seq.* .........................................................................8, 9, 10

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

iv

5155805v.1

## II.    MEMORANDUM OF POINTS & AUTHORITIES

### I. INTRODUCTION

Plaintiffs Brian Cawthorne and Francisco Xavier Valdez (hereinafter "Plaintiffs" or "Class Representatives"), individually and on behalf of the "Settlement Class" (as defined below), hereby submit this motion for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Litigation") and of certification of the proposed settlement class. Defendants, Rush Truck Centers Of California, Inc., Rush Enterprises, Inc., Rush Administrative Services, Inc., And Rush Truck Leasing, Inc., (hereinafter referred to collectively as "Rush" or "Defendants") do not oppose Plaintiffs' motion (Plaintiffs and Defendants shall collectively be referred to as the "Parties").  The terms of the Settlement are set forth in the Amended Settlement Agreement and Release (hereinafter the "Agreement").  *See Declaration of Adrian R. Bacon* (*"Bacon Decl."*), ¶ 3, Ex. A.

The proposed Settlement resulted from the Parties' participation in an all-day mediation session before experienced wage and hour class action mediator Steven Rottman, and subsequent settlement discussions.  The Settlement provides for a substantial financial benefit to the Class Members.  The Settlement Class consists of non-exempt employees who worked for Defendants in California from June 29, 2013 through August 31, 2018 ("the Settlement Period").

The compromise Settlement reached with the guidance of Mr. Rottman will create a Settlement Fund to be established by Defendants in the amount of $550,000.00.  The amount of the Settlement Fund shall not be reduced as a result of any member(s) of the Settlement Class electing to opt out or be excluded from the Settlement or for any other reason.  The Settlement Fund will pay for a Settlement Administrator, Simpluris ("Simpluris"), which will be responsible for providing notice to the Settlement Class, providing notice of this proposed settlement pursuant to and in accordance with 28 U.S.C. § 1715 (the "Class Action

1

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Fairness Act" or "CAFA") (at Rush's election), providing and disbursing settlement checks to Class Members who do not opt-out, maintaining a toll-free telephone number, preparing an Opt-Out List, preparing a list of persons submitting objections to the settlement and acting as a liaison between Class Members and the Parties regarding the settlement.  Settlement members who do not opt-out will receive a pro rata share of the Settlement Fund in the form of a check (after any attorneys' fees and costs awarded by the Court, any Service Award to the Class Representatives, and any costs of claims administration are deducted from the Settlement Fund).  Class Members will not be required to submit a claim form to be eligible to receive payment, and will automatically receive payment unless they opt out.

Plaintiffs Brian Cawthorne and Francisco Xavier Valdez will each receive an incentive payment of $10,000.00 (subject to Court approval) for bringing and litigating this action.  Class Counsel will request an attorneys' fee reimbursement award of $183,333.33 (i.e., one third, 33.33% of the total settlement amount) and litigation costs (not to exceed $10,000), subject to Court approval, to be paid out of the Settlement Fund.  Any unclaimed funds from uncashed settlement checks will escheat to the California Department of Industrial Relations Unclaimed Wage in the name of the Class Member.  No amounts will revert to Defendants.

In consideration for the Settlement Fund, Plaintiffs, on behalf of the proposed Settlement Class (the "Class"), will dismiss the Litigation and unconditionally release and discharge Defendants and other Released Parties from all claims relating to the Litigation.

While Plaintiffs are confident of a favorable determination on the merits, they has determined that the proposed Settlement provides significant benefits to the Settlement Class and is in the best interests of the Settlement Class.  Plaintiffs also believe that the Settlement is appropriate because Plaintiffs recognize the expense and amount of time required to continue to pursue the Litigation, as well

2

as the uncertainty, risk, and difficulties of proof inherent in prosecuting such claims. Similarly, as evidenced by the Agreement, Rush believes that it has substantial and meritorious defenses to Plaintiffs' claims, but has determined that it is desirable to settle the Litigation on the terms set forth in the Agreement.

Plaintiffs believe that the proposed Settlement satisfies all of the criteria for preliminary approval. Accordingly, Plaintiffs move this Court for an order preliminarily approving the proposed Settlement, provisionally certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") for settlement purposes, directing dissemination of Class Notice, and scheduling a Final Approval Hearing.

## II.  STATEMENT OF FACTS

### A.  Proceedings to Date

Defendants provide products and services for the commercial vehicle market in California, including both the sale of commercial trucks, and repair services for said vehicles. The Plaintiffs in this matter, worked as a non-exempt mechanic employees in California.

Plaintiff Cawthorne filed his initial class action complaint ("Complaint") on June 29, 2017. In the Complaint, Plaintiff Cawthorne alleged causes of action for various violations under the California Labor Code, as described above. Plaintiff's claims were brought on behalf of a class of non-exempt employees who were subjected to unlawful timekeeping practices. (Dkt. No. 1-1, Ex. A). Defendants removed the action on or about September 13, 2017. (Dkt. No. 1). On May 4, 2018 Plaintiff Valdez filed a similar Complaint. Plaintiffs filed a First Amended Complaint on January 17, 2019, which is the operative Complaint. Dkt. No. 19.

After meeting and conferring, participating in several preliminary discussions regarding the case, including a discovery exchange, the parties agreed to mediate the matter. Leading up to the mediation, Defendants agreed to provide Plaintiffs with information, data and documentation which included (1) the size

and composition of the Class; (2) information about Defendants' timekeeping and meal and rest break practices; (3) a sample of time and payroll records; and (4) production of Defendants' written wage and hour policies and procedures.

It became clear after engaging in this discovery that there were significant factual, legal and procedural challenges to the case. Plaintiffs' counsel conducted a robust and thorough examination of the legal, factual, and damages issues leading up to mediation. Declaration of Adrian R. Bacon ("Bacon Decl.") ¶¶ 20-46. The Parties attended mediation with Steven Rottman on May 31, 2018, and after a full day of negotiations, reached an agreement in principle. Through his guidance, this Settlement was reached. *See Bacon Decl.* ¶¶ 7-10. During settlement negotiations, Cawthorne's counsel was advised of a separate suit brought by Valdez. Counsel discussed working together for the sake of the class and globally resolved both matters. The cases were formally consolidated in the form of a First Amended Complaint, filed on January 16, 2017. Dkt. No. 19. As set forth below, Plaintiffs respectfully request that the Court approve the Settlement.

   **B.**   **Statement of Facts**

      **1.**   **The Settlement Class**

         **a.**   **The Settlement Class**

The "Settlement Class" is defined in the Agreement as follows:

   *"all individuals who are or were previously employed by any Defendant; in a Covered Job Position; at any point during the Class Period."*

"Covered Job Position" is defined as:

   *"any nonexempt employee of any Defendant working in California during the Class Period. Covered Job Positions include, but are not limited to Technicians, Service Technicians, and Mobile Technicians."*

The "Class Period" is defined as:

*"the time from June 29, 2013 (i.e., four years before the Complaint was filed on June 29, 2017), through and including August 31, 2018."*

(Agreement § I Pg. 3-6)

### b. <u>Class Membership Determination</u>

The Settlement Class consists of all persons who were employed in a non-exempt (hourly) position in California between June 29, 2013 and August 31, 2018 ("The Settlement Period"). This is the distinct time period during which the practices alleged in the complaint were determined to have occurred based on the discovery and information exchanged between the parties. Based on data confirmed by Rush and its counsel, the approximate number of Class Members through August 31, 2018 is 645. This data was confirmed by Plaintiffs via discovery, was confirmed in the context of mediation discussions, and was also worked into the language of the Settlement Agreement itself. Thus, the Plaintiffs were able to verify the number of Class Members.

### 2. <u>Settlement Payment</u>

Under the Proposed Settlement, Rush agrees to establish a Settlement Fund in the amount of $550,000 (Agreement; F(1) p. 13) in order to fund the following: (1) providing notice to Class Members; (2) providing settlement checks to Class Members entitled to receive a settlement check; (3) maintaining a toll-free telephone number; (4) to pay the proposed $10,000 Incentive Payment to each Plaintiffs (*Id*.); and (5) payment of the proposed Attorneys' Fees of 183,333.33 (33.33% of the Settlement Fund) and litigation costs of up to $10,000 (*Id*.)  *See Bacon Decl*. ¶ 20. Any uncashed checks will escheat to the State of California Department of Industrial Relations Unclaimed Wages. (Agreement § III(F)(10) p. 16.)   The amount of the Settlement Fund shall not be reduced as a result of any member(s) of the Settlement Class electing to opt out or be excluded from the Settlement or for any other reason.

### 3.   Monetary Benefit to Class Members and Class Notice

The Settlement Agreement provides for $550,000 in cash benefits (minus Settlement Costs, attorney's fees, and litigation costs) to Class Members on a pro rata basis after the claims period.  There are approximately 645 Class Members who were employed by Rush as non-exempt employees in California during the Settlement Period.  The Claims Administrator will provide notice first via First Class U.S. Mail within 20 days of the Preliminary Approval Order.  (Agreement § III (C)(1)(a) p. 10.)

Class Members will automatically be included in the Settlement and will not have to submit a claim form.  Class Members who Opt Out, must postmark before the Objection Deadline, which will be 30 days following mailing of the Class Notice, and the deadline to Opt Out and Object will also be 30 days following mailing of the Class Notice (Agreement § III(D)(1) p. 12).

The Class Members who do not Opt Out and/or Object will each receive a pro-rata share, calculated proportionately to the number of workweeks they worked for Defendants during the Class Period.  After fees, costs, administration expenses, and taxes, if each and every 645 Class Members participated and did not Opt Out or Object, then they would each receive approximately $432.82 on average for their claims.  These considerations, the damages analysis itself, and the risks to Plaintiffs and the Class are discussed at length in the Declaration of Adrian R. Bacon at ¶¶ 20-46.

### 4.   Scope of Release

The scope of the release by all Class Members is limited in scope to the specific facts and wage claims alleged, or which could have been alleged in the lawsuit at bar, which occurred during the Settlement Period. (Agreement § I(T) p. 5).  The language in the Settlement Agreement was specifically designed so as not to include a broad general release.  The release of claims does not extend to claims beyond those that relate to conduct alleged in the pleadings, i.e. the underpayment

6

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

of wages, claims relating to breaks, wage statement claims, timely payment of wages at termination, reimbursement of expenses, and civil and statutory penalties stemming therefrom. *Id.*

### 5. Opportunity to Opt Out and Object

As explained before, Class Members who Opt Out, must postmark before the Objection Deadline, which will be 30 days following the mailing of the Class Notice, and the deadline to Opt Out and Object will also be 30 days following mailing of the Class Notice Agreement (Agreement § III(D)(1) p. 12). Any Class Member who does not opt out and objects to the proposed settlement must mail his or her objection(s) in writing to the Claims Administrator. To be considered timely, an Objection must be postmarked on or before the Opt-Out and Objection Deadline specified in the Notice, which will be 30 days following the mailing of the Class Notice. (*Id.*) Any Objection must set for the name and case number of this matter, the objecting Class Member's name, address, telephone number and all arguments, citations and evidence supporting the objection. Furthermore, the Objection shall include: whether the objector intends to appear at the hearing, with or without counsel; the name and case number of any other proposed class action settlement the Class Member submitted an objection to; and whether any such objection was submitted on the Class Member's behalf or on behalf of a represented third party. (*Id.*)

### 6. Payment of Notice and Administrative Costs

All costs incurred by the Settlement Administrator in connection with administrating this settlement are to be paid from the gross settlement about of $550,000.00. (Agreement § III(F)(2) p. 14). The Settlement Administrator will use these funds to administer all costs of the settlement, including providing Class Notice, maintaining a toll free number and arranging for payments to Class Members. (*Id.*).

### 7.   Class Representative's Application for Incentive Award

The proposed Settlement contemplates that Class Counsel will request an Incentive Award in the amount of $10,000 to be distributed to each of the Class Representatives, subject to Court approval.  Rush has agreed not to oppose the request as long as it is not greater than $10,000.  (Agreement § III(F)(4) p. 15)

### 8.   Class Counsel's Application for Attorneys' Fees, Costs and Expenses

The proposed Settlement contemplates that Class Counsel shall be entitled to apply to the Court for an award of attorneys' fees in the amount of $183,333.33 (33.33% of the Settlement Fund) and litigation costs of less than $10,000. (Agreement § III(F)(3) p. 14-15). Pursuant to the proposed Settlement, Rush will not oppose the application, as long as it does not exceed this stated amount. (*Id.*)

### 9.   Uncashed Checks

Under the proposed Settlement, all Class Members will automatically be entitled to receive payment under this Settlement unless they opt out.  In the case of any Class Members who are eligible for payment, but who do not cash their checks, the funds will not revert to Defendants, but instead will escheat to the California Department of Industrial Relations Unclaimed Wage in the name of the Class Member.  (Agreement § III(F)(10) p. 16).  Class Member name and address information is in possession of Defendants and will be provided to the Administrator, and it is anticipated that accurate direct notice will be possible for the vast majority, if not the entirety of the Class.

## III.   ARGUMENT

### A.   The Legal Standards for Preliminary Approval of a Class Action Settlement

A class action may not be dismissed, compromised or settled without the approval of the court. Fed. R. Civ. Proc. 23(e).  Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for settlement approval in

8

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

class action settlements, described in the *Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*") § 21.63, *et seq.*, including preliminary approval, dissemination of notice to class members, and a fairness hearing. *Manual*, §§ 21.632, 21.633, 21.634. The purpose of the Court's preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See* 4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq*., and § 13.64 (4th ed. 2002 and Supp. 2004) ("*Newberg*"). The Court is not required to undertake an in-depth consideration of the relevant factors for final approval. Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual*, § 21.632 (4th ed. 2004).

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Utility Reform Project v. Bonneville Power Admin*., 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in class actions such as this. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982). As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig*., 163 F.R.D. 200, 209 (S.D.N.Y. 1995). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel . . . ." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("*Hanlon*"). Furthermore, courts must give "proper deference to the private

9

consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027.

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.). Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits, *Officers for Justice v. Civil Service Comm'n,* 688 F.2d at 625. Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

Preliminary approval of the settlement should be granted if, as here, there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." *Manual for Complex Litigation* § 21.632, at 321 (4th ed. 2004).

Furthermore, the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See., e.g.*, *Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in the

court's determination of the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *See Hanlon*, 150 F.3d at 1026. This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted).

Based on these standards, Plaintiffs respectfully submit that, for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate.

**B.** **Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating this Case**

Defendants vigorously contested the claims asserted by Plaintiffs in this Litigation.  Defendants' position throughout the case was multifaceted and presented steep procedural and factual hurdles, which were given fair weight at mediation.  Defendants implemented a non-mandatory dispute resolution policy dating back to 2013.  That policy included an arbitration agreement with a class action waiver.  Mr. Cawthorne elected to participate in class action lawsuits, but nearly all of the other Class Members did elect to waive their ability to proceed or participate in class actions.  In discovery, it was determined that approximately 70% of the Class entered into such agreements, with over 80% of the Class Members at the location Cawthorne worked (Fontana) having entered into such agreements.  Defendants took the position that Cawthorne would not be able to represent the majority of Class Members in the event of a contested class certification motion, due to the existence of binding arbitration agreements with

11

class action waivers.  This was a legitimate concern, as evidenced by recent binding precedent from the Ninth Circuit and Supreme Court.  See *O'Connor v. Uber Technologies, Inc*., 904 F.3d 1087 (9th Cir. 2018) (reversing certification of employment class action due to existence of binding arbitration agreements, and overbroad class definition); and *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018).  The arbitration agreements for the majority of the class were a serious and legitimate hurdle at the certification phase of the case, despite Cawthorne not having entered into such an agreement.

Regarding merits issues, Defendants disputed that it paid only for active repair order time for technicians, and took the position that it paid for time in between jobs.  Defendants also took the position that the circumstances experienced by Cawthorne would have been limited to the Fontana shop where he worked, not other locations.  Defendants' written formal pay plans and policies with respect to Class Members complied with California law, after discovery was conducted on the issue.  Thus Defendants argued that individualized issues would defeat certification.  In addition, regarding meal and rest breaks, Defendants pointed to its compliant written policies and procedures, as well as the sample of time records produced in discovery, which, at least with respect to meal breaks, evidenced substantial compliance, and a low violation rate, which affected both the damages analysis, as well as the risk that the claim would not be certified. Defendants pointed out that because its written policies and procedures complied with California law, that any violations which occurred were a result of good faith, and were not willful, which meant that it would be difficult for Plaintiffs to recover penalties on behalf of the Class Members under Labor Code 203 and 226.

Ultimately, the existence of complaint policies, time records which generally showed substantial compliance, and arbitration agreements in place for the vast majority of the Class Members made the case challenging from a merits perspective, a damages perspective, and a procedural perspective.  These defenses

were all given weight in the context of mediation, with the scrutiny of experienced and informed class counsel, and with the oversight of an experienced wage and hour class action mediator.  These facts and evidence cast doubt on damages issues as well, as described in the accompanying declaration of class counsel. Bacon Decl. ¶¶ 20-46.  Notably, with respect to PAGA penalties, recent California appellate law demonstrates the discretion of trial courts in determining how steeply to reduce penalties when an employer takes good faith measures to comply.  See *Carrington v. Starbucks Corporation*, (Ct. App. 4th Dist. Div. 1, Cal. Dec. 19, 2018) Case No. D072392, 2018 WL 6695970 (certified for publication) (reducing PAGA meal break penalties from a potential of $70 million to $150,000 at judgment due to evidentiary showings of substantial compliance.)

These factors weighed into settlement decisions, and a fair compromise was struck which class counsel believes achieved meaningful and reasonable relief for the Class.  *See Bacon Decl*, ¶¶ 20-46.  The negotiated Settlement reflects a compromise between avoiding that risk and the risk that the class might not recover.  Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation.

## C. <u>Defendants' Agreement to Finance the Common Benefit Fund Provides a Fair and Substantial Benefit to the Class</u>

As set forth above, Rush has agreed to pay $550,000.00 to fund the settlement, which includes notice and claims administration costs, creating and maintaining a toll free number, an Incentive Award to Plaintiffs Cawthorne and Valdez in the amount of $10,000 each and attorneys' fees in the amount of $183,333.33 and reimbursement of litigation costs of up to $10,000.  *See Bacon Decl*. ¶ 21.

### D.   **The Settlement was Reached as the Result of Arms-Length Negotiation, Without Collusion, with the Assistance of the Mediator**

The proposed Settlement is the result of intensive arms-length negotiation, including an all-day mediation session before Steven Rottman, a skilled and experienced wage and hour class action mediator, on May 31, 2018.  With the guidance of Mr. Rottman, and working independently of the Court, the Parties were able to reach a proposed resolution of this case. *See Bacon Decl*, ¶¶ 7-10. Class Counsel are satisfied that the information provided about the number of class members and number of work weeks worked by said Class Members is accurate, as it was authenticated via corroborating statements by Plaintiffs, as well as extrapolations as to the number of work weeks and pay stubs that would have been issued to said number of employees during the time period in question, as a matter of basic math.  Moreover, the base figures used to arrive at the damages estimates were provided by Plaintiffs, who each worked for Defendants for several years, and were highly familiar with their working experiences and those of their co-workers.   In addition, Defendants agree to an escalator clause in the release, ensuring that the figures provided at mediation would not unexpectedly rise during the approval phase.  (Agreement § 3III(F)(17) p 19 6.)  The time and effort spent examining and investigating the claims militate in favor of preliminary approval of the proposed Settlement, as the process strongly indicates that there was no collusion.  *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

### E.   **The Settlement Experienced Counsel Have Determined that the Settlement is Appropriate and Fair to the Class**

The Parties are represented by counsel experienced in complex class action litigation. Class Counsel has extensive experience in class actions, as well as

particular expertise in class actions relating to wage and hour matters under the California Labor Code.  *See* Bacon Decl. ¶¶ 47-51; Hollis Decl. Ex A.    Class Counsel believe that under the circumstances, the proposed Settlement is fair, reasonable and adequate and in the best interests of the Class Members.  *See* Bacon Decl. ¶¶ 20-51; Hollis Decl. ¶¶ 17-24

### F.    The Court Should Preliminarily Certify the Class for Purposes of Settlement

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement. *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). Certification of a class for settlement purposes requires a determination that certain requirements of Rule 23 are met.  *Id.*  As explained below, class certification is appropriate here because the Proposed Settlement meets the requirements of Rule 23(a) and Rule 23(b)(3) for settlement purposes.

### G.    The Proposed Class is Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable.  "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).  The Ninth Circuit has required at least fifteen members to certify a class, and classes of at least forty members are usually found to have satisfied the numerosity requirement. *Harik v. Cal. Teachers Ass'n,* 326 F.3d 1042, 1051 (9th Cir. 2003); *Davis v. Four Seasons Hotel Ltd.*, 277 F.R.D. 429, 435 (D. Hawaii 2011).   Here, the Settlement Class consists of approximately 645 non-exempt employees.    Thus, the proposed Class is sufficiently numerous for purposes of certifying a settlement class.

///

## H.    The Commonality Requirement is Satisfied, Because Common Questions of Law and Fact Exist.

The commonality requirement is met if there are questions of law and fact common to the class. *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, for purposes of settlement, the proposed Class Members' claims stem from the same factual circumstances, specifically that Defendants allegedly failed to pay for all compensable time working off the clock, failed to provide meal and rest breaks, and derivatively failed to provide accurate wage statements and failed to provide all wages due at termination to Class Members during the Settlement Period.

Plaintiffs' claims also present questions of law that are common to all members of the Class for settlement purposes, including: (1) Whether Defendants failed to provide Plaintiffs and members of the Class with timely, duty-free 30 minute meal periods in violation of the Labor Code; (2) Whether Defendants failed to provide Plaintiffs and members of the Class with timely, duty-free rest periods in violation of the Labor Code; (3) Whether Defendants unlawfully and/or willfully deprived Plaintiffs and members of the Class of meal and rest breaks and/or pay/premiums for missed meal and rest breaks pursuant to Labor Code sections 200, 226.7, 512, and 8 CCR section 11090; (4) Whether Defendants, by allegedly requiring Plaintiffs and members of the Class to perform work off-the-clock, failed to pay Plaintiffs and members of the Class all of the wages they were due and owed; (5) Whether Defendants' alleged policy of requiring Plaintiffs and members of the Class to perform work off-the-clock is an unlawful, unfair or fraudulent business act or practice in violation of UCL section 17200, et seq.; (6) Whether Defendants failed to provide Plaintiffs and members of the Class with accurate wage statements in violation of Labor Code section 226, and applicable Industrial Welfare Commission Orders, and applicable State Regulations; (7)

16

Whether Defendants had/has policies and/or practices that result in hours worked not being adequately captured and recorded; (8) Whether Defendants unlawfully and/or willfully failed to promptly pay compensation owing to members of the Subclass upon termination of their employment in violation of Labor Code sections 201-203; (9) Whether Plaintiffs and members of the Class sustained damages, and if so, the proper measure of such damages, as well as interest, penalties, costs, attorneys' fees, and equitable relief; and, (10) Whether Defendants violated the Unfair Competition Law of California, Business and Professions Code sections 17200, et seq., by violating the above-cited provisions, and treating Plaintiffs and members of the Class unfairly by failing to pay all wages due and for all hours worked, depriving them of meal and rest breaks and failing to provide and pay for missed breaks, failing to pay wages upon termination, failing to furnish an accurate, itemized wage statement upon payment of wages and failing to pay all compensation due upon discharge.

Under these circumstances, the commonality requirement is satisfied for purposes of certifying a settlement class. *See Hanlon,* 150 F. 3d at 1019-20.

## I.  The Typicality Requirement is Met.

The typicality requirement is met if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. For purposes of settlement, Plaintiffs' claims are typical of the class because they arise from the same factual basis – wages due and owing for time worked off the clock; break premiums owed for improper provision of meal and rest breaks, and penalties owed deriving from these common violations. *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). Accordingly, the Class Representative's claims are typical of those of the Settlement Class. Thus, the typicality requirement is satisfied for purposes of certifying a settlement class.

///

**J.     The Adequacy Requirement is Satisfied.**

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

Plaintiffs and Class Counsel have no conflicts of interest with other Class Members because, for purposes of the Settlement, Plaintiffs' claims are typical of those of other Settlement Class Members. In addition, Plaintiffs and Class Counsel have been prosecuting this Litigation vigorously on behalf of the Class. Plaintiffs and Class Members share the common goal of protecting and improving employee rights to fair wages, and there is no conflict among them.   Class Counsel have extensive experience in class action litigation, including wage and hour litigation under the California Labor Code in both California state and federal court.  Class Counsel is qualified to represent the interests of the Class. Rule 23(a)(4) is therefore satisfied for purposes of certifying a settlement class.

**K.     Common Questions Predominate, Sufficient to Certify a Class for Settlement Purposes Only.**

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members."   Fed. R. Civ. P. 23(b)(3).   The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 (9th Cir. 2001).  Central to this question is "'the notion that the adjudication of common issues will help achieve judicial

economy.'"  *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), amended, 273 F. 3d 1266 (9th Cir. 2001).

Here the central inquiry for purposes of the Proposed Settlement is whether Rush violated the California Labor Code by requiring employees to work off the clock and provided inadequate breaks. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

## L.   Class Treatment for Settlement Purposes is Superior to Individual Resolutions.

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund*, 244 F.3d at 1163.  *See also, Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

Consideration of the factors listed in Rule 23(b)(3) supports the conclusion that, for purposes of a settlement class, certification is appropriate. Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23 (b)(3).

However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997). "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious . . . ." *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998); *see also Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of settlement'") (citation omitted). Here, the Rule 23(b)(3)(A), (B) and (C) factors all favor class certification:

- Any Settlement Class Member who wishes to pursue a separate action can opt out of the Settlement.
- Plaintiffs believe this forum is appropriate, and Defendants do not oppose the forum.

## M.  <u>The Proposed Class Notice is Consistent with Ninth Circuit Requirements and Provides Adequate Notice for Claims, Objections and Opt Outs.</u>

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must order the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

Pursuant to Fed. R. Civ. P. 23 (e)(1)(B), "[t]he court must direct notice in a

20

reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).   Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Administrator shall disseminate or arrange for the dissemination of Class Notice via a long form written notice by mail that will be materially consistent with Exhibit B to the Declaration of Adrian Bacon filed contemporaneously herewith. The Class Notice here satisfies each of the requirements of Rule 23(c)(2)(B) above. Further, mailed notice has routinely been held to be adequate notice to a Settlement Class. *See Schaffer v. Litton Loan Servicing, LP*, CV 05-07673 MMM JCX, 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) (approving notice plan where class members were sent postcards that directed them to a settlement website); *Lo v. Oxnard European Motors, LLC*, 11CV1009 JLS MDD, 2012 WL 1932283, at *1 (S.D. Cal. May 29, 2012) (final approval of class settlement using postcard notice and settlement website).

The Parties possess records of all name, address and social security numbers of Class Members. It will be very easy for the claims administrator to find updated mailing addresses for these individuals, and send direct notice to each and every Class Member, with a very high likelihood that they will receive Notice. The Settlement Administrator will run the names and addresses obtained through the National Change of Address (NCOA) database. To the extent any physical addresses identified through reverse look-up are no longer valid, the

Settlement Administrator will send Class Notice to any forwarding addresses that are provided. *See generally Barani v. Wells Fargo Bank, N.A.*, Case No. 12CV2999-GPC KSC, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving settlement using reverse lookup to locate class members).

Settlement Class Members will have 30 days from the time dissemination of Class Notice has been completed to opt out of the settlement or object. *Cf. Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement) (citing *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of notice which was mailed 26 days before the deadline for opting out of the settlement)).  Further, a toll free number shall be maintained and accessible to Settlement Class Members during this time and through the conclusion of the settlement proceedings in this case.   This notice program was designed to meaningfully reach the largest number of Settlement Class Members possible, and is anticipated to reach nearly everyone.

The dissemination of the Long Form Class Notice satisfies the requirements of due process and constitutes the best notice practicable under the circumstances. The Settlement Administrator shall prepare and file a declaration prior to the Final Approval Hearing certifying that the notice program has been properly administered in accordance with this Agreement, this Court's Orders, and as described herein.

## N.    **The Court Should Preliminarily Certify the Class for Purposes of Settlement.**

"[T]wo criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the

22

class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The adequacy of representation requirement is met here. For settlement purposes, Class Counsel moves for Plaintiffs Cawthorne and Valdez to be preliminarily appointed as Class Representatives. Class Counsel requests that Todd M. Friedman and Adrian Bacon of The Law Offices of Todd M. Friedman, P.C., as well as Graham Hollis of Graham Hollis APC, preliminarily be appointed as Class Counsel for purposes of the Settlement. Plaintiffs' counsel has extensive experience sufficient to be appointed as Class Counsel, collectively having been appointed class counsel in well over 100 class action cases in state and federal court, and achieving hundreds of millions of dollars in class member relief. Plaintiffs Cawthorne and Valdez understand the obligations of serving as class representatives, have adequately represented the interests of the putative class, and have retained experienced counsel. Plaintiffs have no antagonistic or conflicting interests with the Settlement Class, and all members of the Settlement Class are eligible to receive the same benefits.

## O. **The Court Should Appoint Simpluris, Inc. as the Settlement Administrator.**

The proposed Agreement recommends that the Court appoint Simpluris to serve as the Settlement Administrator. Simpluris specializes in providing administrative services in class action litigation, and has extensive experience in administering consumer protection and privacy class action settlements. *See* Bui Decl. Defendants do not oppose this request.

## P. **Final Approval Hearing Should be Scheduled.**

The last step in the settlement approval process is the formal fairness or Final Approval Hearing, at which time the Court will hear all evidence and argument, for and against, the proposed Settlement. Plaintiffs request that the Court grant preliminary approval of the Settlement and schedule a Final Approval Hearing to be held not before 120 days after the date of entry of the Preliminary

23

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Approval Order, in order to allow sufficient time for providing class notice, the toll-free number, and completion of the period for class members to submit exclusion requests and objections.

## IV.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order preliminarily approving the proposed Settlement and certifying a class for settlement purposes.

Date: February 17, 2019                **The Law Offices of Todd M. Friedman, PC**

                                        By: _ /s/ Adrian R. Bacon_
                                           Adrian R. Bacon
                                           *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

Filed electronically on this 17th day of February, 2019, with:

United States District Court CM/ECF system

Notification sent electronically on this 17th day of February, 2019, to:

Honorable Jesus G Bernal
United States District Court
Central District of California

And all Counsel of Record as recorded on the Electronic Service List.

s/Adrian R. Bacon
Adrian R. Bacon, Esq.