Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com

Graham S.P. Hollis (SBN 120577)
ghollis@grahamhollis.com
Vilmarie Cordero (SBN 268860)
vcordero@grahamhollis.com
**GRAHAMHOLLIS APC**
3555 Fifth Avenue, Suite 200
San Diego, California 92103
Telephone: 619.692.0800
Facsimile: 619.692.0822
*Attorneys for Plaintiffs*

## UNITED STATE DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN CAWTHORNE, AND FRANCISCO XAVIER VALDEZ individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>RUSH TRUCK CENTERS OF CALIFORNIA, INC., RUSH ENTERPRISES, INC, RUSH ADMINISTRATIVE SERVICES, INC, AND RUSH TRUCK LEASING, INC.<br><br>Defendants | **CASE NO.: 5:17-cv-1541 (JGB) (SPx)**<br><br>**CLASS ACTION PLAINTIFFS' NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Assigned to the Hon. Jesus G. Bernal<br><br>**DATE:**   AUGUST 12, 2019<br>**TIME:**       9:00 A.M.<br>**COURTROOM:** 1<br>[Filed and Served Concurrently with Declaration of Todd M. Friedman; Declaration of Mary Butler; [Proposed] Order] |

1

2  **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

3      **PLEASE TAKE NOTICE** that on Monday, August 12, 2019 at 9:00 a.m.,

4  before the United States District Court, Central District of California, Courtroom 1,

5  3470 Twelfth Street, Riverside, CA, 92501 plaintiffs Brian Cawthorne and

6  Francisco Xavier Valdez ("Plaintiffs") will move this Court for an order granting

7  final approval of the class action settlement as detailed in Plaintiffs' Memorandum

8  of Points and Authorities.

9      This Motion is based upon this Notice, the accompanying Memorandum of

10  Points and Authorities, the declarations and exhibits thereto, the Complaint, all

11  other pleadings and papers on file in this action, and upon such other evidence and

12  arguments as may be presented at the hearing on this matter.

13

14  Date: June 24, 2019                    **The Law Offices of Todd M. Friedman, PC**

15                                    By:  */s/ Todd M. Friedman*

16                                    Todd M. Friedman
                                      *Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................1

I.    INTRODUCTION ...............................................................................1

II.   STATEMENT OF FACTS ..................................................................3

      A.    Factual Background.................................................3

      B.    Proceedings to Date...............................................3

      C.    Statement of Facts..................................................4

          1. The Settlement Class...............................................4

            a. The Settlement Class .....................................4

            b. Class Membership Determination ..................4

          2.Settlement Payment..................................................5

III.  ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL ......6

      A.    Direct Mail Notice Provided........................................6

      B.    Objections, Opt Outs, and Settlement Payouts...........................7

          1. Settlement Checks and Credits.....................................7

          2. Class Representative's Incentive Payment ..........................8

          3. Attorney's Fees and Costs ..........................................8

IV.   ARGUMENT ...................................................................................10

      A. Final Approval of The Proposed Settlement Is Warranted ...........10

          1.The Strength of The Lawsuit And The Risk, Expense, Complexity, And Likely Duration of Further Litigation..........12

          2.The Amount Offered In Settlement .......................................14

          3.Class Members were provided with the best notice possible, which afforded them an opportunity to choose whether to participate in the Settlement ....................................................16

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

i

      4. The Extent of Discovery Completed ...................................17

      5. The Experience And Views of Class Counsel.......................17

      6. The Reaction of Class Members To The Settlement............18

**V.     CONCLUSION .........................................................................18**

**United States District Court CM/ECF system .....................................................20**

1
2

# **TABLE OF AUTHORITIES**

3

**Cases**

4

*Bellinghausen v. Tractor Supply Co.*,

5
    306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015) ............................................9

6

*Boyd v. Bechtel Corp.*,

7
    485 F. Supp. 610 (N.D. Cal. 1979)......................................................18

8

*Buccellato v. AT&T Operations, Inc.*,

9
    No. 10-cv-463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) .......10

10

*Carrington v. Starbucks Corporation*,

11
    (Ct. App. 4th Dist. Div. 1, Cal. Dec. 19) Case No. D072392, 2018 WL 6695970.14

12

*Detroit v. Grinnell Corp.*,

13
    495 F.2d 448 (2d Cir. 1974) ................................................................19

14

*Ellis v. Naval Air Rework Facility*,

15
    87 F.R.D. 15 (N.D. Cal. 1980) .......................................................12, 18

16

*Girsh v. Jepson*,

17
    521 F.2d 153 (3d Cir. 1975) ...............................................................12

18

*Hanlon v. Chrysler Corp.*,

19
    150 F.3d 1011, 1026 (9th Cir. 1998).......................................10, 11, 12

20

*In re Diamond Foods, Inc.*,

21
    2014 U.S. Dist. LEXIS 3252 (N.D. Cal. Jan. 10, 2014) ........................7

22

*In re Ferrero Litig.*,

23
    2012 U.S. Dist. LEXIS 15174 (S.D. Cal. Jan. 23, 2012) ....................12

24

*In re Global Crossing Sec. and ERISA Litig.*,

25
    225 F.R.D. 436 (E.D. Pa. 2000) .....................................................16, 17

26

*In re Mego Fin'l Corp. Sec. Litig.*,

27
    213 F. 3d 454 (9th Cir. 2000).........................................................16, 17

28

*In re Omnivision Tech., Inc.*,

559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) ....................................16

*In re Online DVD-Rental Antitrust Litigation*,

779 F.3d 934 (9th Cir. Feb. 27, 2015) ....................................................9

*In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act*

*(FACTA) Litigation*,

295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) .............................................9

*In re Veritas Software Corp. Sec. Litig.*,

396 Fed. App'x 815, 816 (3d Cir. 2010) ...............................................10

*In re Warner Communications   Sec. Litig.*,

618 F. Supp. 735 (S.D. N.Y. 1985) ...........................................12, 18, 19

*Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*),

 654 F.3d 935 (9th Cir. Cal. 2011) ........................................................13

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,

671 F.Supp. 819 (D. Mass. 1987)....................................................12, 18

*National Rural Tele. Coop. v. DIRECTV, Inc.*,

221 F.R.D. 523 (C.D. Cal. 2004) ....................................................16, 17

*O'Connor v. Uber Technologies, Inc.*,

904 F.3d 1087 (9th Cir. 2018) ..............................................................13

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,

688 F.2d 615 (9th Cir. 1982) .........................................................11, 12

*Radcliffe v. Experian Info. Solutions, Inc.*,

2013 U.S. App. LEXIS 9126 (9th Cir. Mar. 4, 2013) ..........................10

*Raffin v. Medicredit, Inc.*,

Case No. CV 15-4912-MWF (PJWx), 2018 WL 6011551 (C.D. Cal. May 11,

2018)......................................................................................................10

*Rodriguez v. West Publishing Corp.*,

563 F.3d 948 (9th Cir. 2009) .................................................................12

*Silber v. Mabo*n,

18 F. 3d 1449 (9th Cir. 1994) ...................................................................16

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003) ..................................................................12

*Steinfeld v. Discover Fin. Servs.*,

   2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) ...................19

*Torrisi v. Tucson Elec. Power Co.*,

   8 F.3d 1370, 1375 (9th Cir. 1993) .........................................................12

*Wilson v. Airborne, Inc.*,

   2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008) ...................7

## Statutes

2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002) ...................17

28 U.S.C. § 1715 ..........................................................................................1

Manual for Complex Lit., Fourth § 30.42 ..................................................17

## Other Authorities

2 Newberg on Class Actions (4th Ed. & Supp. 2002) ...............................17

Manual for Complex Lit., Fourth.................................................................17

## Rules

Fed. R. Civ. P. 2 ..........................................................................................10

Fed. R. Civ. P. 23(e)(1)(C) ........................................................................11

Rule 23(b)(3) ...............................................................................................16

Rule 23(c)(2)(B) ..........................................................................................16

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

v

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Brian Cawthorne and Francisco Xavier Valdez (hereinafter "Plaintiffs" or "Class Representatives"), individually and on behalf of the "Settlement Class" (as defined below) hereby submit their Motion for Final approval of the proposed settlement (the "Settlement") of this action (the "Action.) Defendants, Rush Truck Centers Of California, Inc., Rush Enterprises, Inc., Rush Administrative Services, Inc., And Rush Truck Leasing, Inc., (hereinafter referred to collectively as "Rush" or "Defendants") do not oppose Plaintiffs' motion (Plaintiffs and Defendants shall collectively be referred to as the "Parties").

The proposed Settlement resulted from the Parties' participation in an all-day mediation session before experienced wage and hour class action mediator Steven Rottman, and subsequent settlement discussions.  The Settlement provides for a substantial financial benefit to the Class Members.  The Settlement Class consists of non-exempt employees who worked for Defendants in California from June 29, 2013 through August 31, 2018 ("the Settlement Period").

The compromise Settlement reached with the guidance of Mr. Rottman will create a Settlement Fund to be established by Defendant in the amount of $550,000. The amount of the Settlement Fund shall not be reduced as a result of any member(s) of the Settlement Class electing to opt out or be excluded from the Settlement or for any other reason.  The Settlement Fund will pay for a Settlement Administrator, Simpluris ("Simpluris"), which was responsible for providing notice to the Settlement Class, providing notice of this proposed settlement pursuant to and in accordance with 28 U.S.C. § 1715 (the "Class Action Fairness Act" or "CAFA") (at Defendants' election), providing and disbursing settlement checks to Class Members who do not opt-out, maintaining a toll-free telephone number, preparing an Opt-Out List, preparing a list of persons submitting objections to the settlement and acting as a liaison between Class Members and the Parties regarding the settlement. Settlement members who do not opt-out will receive a share of the Settlement Fund

proportionate to the number of workweeks they worked for Defendant during the Class Period, in the form of a check (after any attorneys' fees and costs awarded by the Court, any Service Award to Class Representative, and any costs of claims administration are deducted from the Settlement Fund).  Class Members were not required to submit a claim form to be eligible to receive payment, and will automatically receive payment unless they opt out. The Class Members were informed of the Settlement by Direct Mail notice.

The Class Members who do not Opt Out and/or Object will each receive a pro-rata share, calculated proportionately to the number of workweeks they worked for Defendant during the Class Period.  After fees, costs, administration expenses, and taxes, the 848 Class Members who participated and did not Opt Out or Object, then they would each receive approximately $344.94 on average, and up to $1,041.10 for their claims.[1]  The settlement amount to class members is fair and reasonable in comparison to what Class Members are legally entitled to recover under the law, based on the diligence of counsel through a thorough damages analysis conducted in advance of mediation.  This represents a significant recovery for Class Members  The strength of this settlement is further evidenced by the fact that Simpluris received only 9 valid opt outs and zero objections to the settlement, while reaching over 99% of Class Members with Direct Mail Notice.  This is an outstanding settlement that should be given final approval.

---

[1] While the number of Class Members increased since the time of Preliminary Approval, two factors ameliorate any concern that the Court or Class Members might have with respect to any potential dilution of settlement funds. First, Plaintiff negotiated for an escalator clause in the release, which means that there will be a proportionate increase to the class settlement fund based on the increase in number of work weeks.  Second, while the number of Class members increased rather considerably, the number of workweeks, which is where any true dilution would come into play based on the calculations of class distribution, did not increase significantly.  Thus, there is little dilution of benefits, merely an influx of new employees at the very end of the Class period, who will each receive very little of the fund, as compared to those Class Members who were likely to have experienced greater alleged injury.

## II.    STATEMENT OF FACTS

### A.    Factual Background

Defendants provide products and services for the commercial vehicle market in California, including both the sale of commercial trucks, and repair services for said vehicles.  The Plaintiffs in this matter, worked as a non-exempt mechanic employees in California.

### B.    Proceedings to Date

Plaintiffs filed the initial class action complaint ("Complaint") on August 3, 2016.  In Plaintiff Cawthorne filed his initial class action complaint ("Complaint") on June 29, 2017.  In the Complaint, Plaintiff Cawthorne alleged causes of action for various violations under the California Labor Code, as described above. Plaintiff's claims were brought on behalf of a class of non-exempt employees who were subjected to unlawful timekeeping practices. (Dkt. No. 1-1, Ex. A). Defendants removed the action on or about September 13, 2017.  (Dkt. No. 1).  On May 4, 2018 Plaintiff Valdez filed a similar Complaint. Plaintiffs filed a First Amended Complaint on January 17, 2019, which is the operative Complaint.  Dkt. No. 19.

After meeting and conferring, participating in several preliminary discussions regarding the case, including a discovery exchange, the parties agreed to mediate the matter.  Leading up to the mediation, Defendants agreed to provide Plaintiffs with information, data and documentation which included (1) the size and composition of the Class; (2) information about Defendants' timekeeping and meal and rest break practices; (3) a sample of time and payroll records; and (4) production of Defendants' written wage and hour policies and procedures.

It became clear after engaging in this discovery that there were significant factual, legal and procedural challenges to the case.  Plaintiffs' counsel conducted a robust and thorough examination of the legal, factual, and damages issues leading up to mediation.  Declaration of Adrian R. Bacon in Support of Preliminary Approval ("Bacon Decl Prelim.") (Dkt. No. 20-1.  ¶¶ 20-46).  The Parties attended mediation with Steven Rottman on May 31, 2018, and after a full day of negotiations,

reached an agreement in principle.  Through his guidance, this Settlement was reached. *See Bacon Decl Prelim.* ¶¶ 7-10.  During settlement negotiations, Cawthorne's counsel was advised of a separate suit brought by Valdez.  Counsel discussed working together for the sake of the class and globally resolved both matters.  The cases were formally consolidated in the form of a First Amended Complaint, filed on January 16, 2017.  Dkt. No. 19.

On March 18, 2018 This Honorable Court issued an Order, preliminary approving the settlement in this Matter. Dkt. No. 21.

## C.    Statement of Facts
### 1.    The Settlement Class
#### a.    The Settlement Class

The "Settlement Class" is defined in the Agreement as follows:

> *"all individuals who are or were previously employed by any Defendant; in a Covered Job Position; at any point during the Class Period."*

"Covered Job Position" is defined as:

> *"any nonexempt employee of any Defendant working in California during the Class Period.  Covered Job Positions include, but are not limited to Technicians, Service Technicians, and Mobile Technicians."*

The "Class Period" is defined as:

> *"the time from June 29, 2013 (i.e., four years before the Complaint was filed on June 29, 2017), through and including August 31, 2018."*

(Agreement § I Pg. 3-6)

#### b.    Class Membership Determination

The Settlement Class consists of all persons who were employed in a non-exempt (hourly) position in California between June 29, 2013 and August 31, 2018 ("The Settlement Period").  This is the distinct time period during which the practices alleged in the complaint were determined to have occurred based on the discovery and information exchanged between the parties.  Based on data confirmed

by Rush and its counsel, the approximate number of Class is 848. This data was confirmed by Plaintiffs via discovery, was confirmed in the context of mediation discussions, and was also worked into the language of the Settlement Agreement itself. Thus, the Plaintiffs were able to verify the number of Class Members.

### 2.   Settlement Payment

Under the Proposed Settlement, Rush agrees to establish a Settlement Fund in the amount of $550,000 (Agreement; F(1) p. 13) in order to fund the following: (1) providing notice to Class Members; (2) providing settlement checks to Class Members entitled to receive a settlement check; (3) maintaining a toll-free telephone number; (4) to pay the proposed $10,000 Incentive Payment to each Plaintiffs (*Id*.); and (5) payment of the proposed Attorneys' Fees of 183,333.33 (33.33% of the Settlement Fund)[2] and litigation costs of up to $10,000 (*Id*.) *See Bacon Decl*. *Prelim* ¶ 20. Any uncashed checks will escheat to the State of California Department of Industrial Relations Unclaimed Wages. (Agreement § III(F)(10) p. 16.) The amount of the Settlement Fund shall not be reduced as a result of any member(s) of the Settlement Class electing to opt out or be excluded from the Settlement or for any other reason. The amount of the Settlement Fund shall not be reduced as a result of any member(s) of the Settlement Class electing to opt out or be excluded from the Settlement or for any other reason.

The Class Members who do not Opt Out and/or Object will each receive a pro-rata share, calculated proportionately to the number of workweeks they worked for Defendant during the Class Period. After fees, costs, administration expenses, and taxes, the 841 Class Members who participated and did not Opt Out or Object, will each receive approximately $344.94 on average, and up to $1,041.10 for their claims. The settlement amount to class members is fair, based on the diligence of counsel through a thorough damages analysis conducted in advance of mediation. These considerations, the damages analysis itself, and the risks to Plaintiffs and the

---

[2] Although the Settlement Fund slightly increased due to a triggering of the escalator clause, counsel asks for fees based on a percentage of the original negotiated fund.

Class are discussed at length in the Declaration of Adrian R. Bacon in Support of Motion for Preliminary Approval of Class at ¶¶ 20-46. Docket #20-1.

## III.    ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

The Claims Administrator's compliance is described below.

### A.    Direct Mail Notice Provided

Simpluris complied with the notice procedure set forth in the Preliminary Approval Order.  Dkt. No. 21.  As required by the Preliminary Approval Order, Simpluris mailed individual long form notices by direct mail to the settlement Class Members that included a summary of the Settlement's terms.  Declaration of Mary Butler, ¶ 3 Ex A.  The direct mail notice also informed the Class of the Claims Administrator's toll-free telephone, where Class Members could obtain further information about the Settlement and also opt out or object.  *Id*. ¶ 4.  As part of the preparation for mailing, all names and addresses contained in the Class were processed against the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Class Members before mailing the Notice postcard.  *See Id*. at ¶ 7.  To the extent an updated address for an individual identified as a Class Member was found in the NCOA database, the updated address was used for the mailing of the Notice Packet.  *Id*.

Defendant provided data to Simpluris containing names, addresses and phone numbers of individuals who were employees of Defendant during the class period. This data contained information that was used by Simpluris to send out 848 mail notice long forms.  As of today, 2 of these Notice Forms remain undelivered, which equates to over 99% reach of the Potential Class Members by direct mail.  *See* Butler Decl., ¶ 9.  Looked at another way, over 99% of the Class Members were sent direct mail notice, which clearly satisfies due process.  *See e.g.*, *Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of settlement where measurements used to estimate notice reach suggested that 80% of adults learned of the settlement).

---

**B.**    **Objections, Opt Outs, and Settlement Payouts**

Class Members were provided no less than 30 days to review the Settlement, make timely opt outs and objections.  After this time period had lapsed, Simpluris has reported that, to date, there were only 7 opt outs and zero objectors to the Settlement *Id*. ¶¶ 13-14.  The deadline to submit a Request for Exclusion or Object was June 13, 2019. *Id*. ¶ 13.  The fact that there were not only zero objections, but only 6 opt outs, out of 848 Class Members highly supports the adequacy of the proposed Settlement.  *Id*.  *See In re Diamond Foods, Inc*., 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class members to the proposed class settlement.  After 67,727 notices were sent to potential class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses.").

**1.**    **Escalator Clause and Increase in Workweeks**

At mediation, Class Counsel insisted on the inclusion of an escalator clause in the release.  Such a clause would protect the class from any potential instances where the number of workweeks could increase, due to a number of potential reasons, between when the terms of the Settlement were negotiated and when the Court ruled on the proposed Preliminary and Final Approval Motions.  The clause is set forth in the Release and states:

> To the extent confirmatory discovery reveals that both the number of Class Members and the number of workweeks increase by more than 10% each, Defendants agree to a proportionate clause in the Net Settlement Fund for each workweek beyond the 10% threshold. Specifically, the value of each workweek is the Net Settlement Fund divided by 68,635 workweeks (the "Workweek Value"). To the extent there are more than 75,498.5 workweeks, and more than 710 Settlement Class Members as of August 31, 2018, Defendant will pay the Workweek Value for each workweek beyond 75,498.5.

Agreement § III(F)(17) p. 19.  Class Counsel also ensured that the calculation of distribution would be determined based on workweeks worked during the Class Period, so that any dilution of new hires at the tail end of the Class Period would

not detract in any significant way from the recoveries of Class members who had worked for Defendants for longer durations.  Agreement § III(F)(7) p. 16.

Following preliminary approval, when it came time to give Class Notice, diligence of counsel for the Parties uncovered an increase in the class size due to passage of time, and anticipated turnover.  The Class Size increased from 645 to 842.  However, the number of workweeks had only increased from 68,635 to 75,944.86, which is an overage from the escalator clause of only 446.36 workweeks. As a result of the escalator clause, the Parties have agreed that the total Settlement Fund shall increase by $1,734.23, for a total of $551,734.23.  Thus, the distributable Net Settlement Fund from which distributions to Class Members will be made after deduction of all fees and expenses, will be $289,400.90, which accounts for the modest increase in workweeks above the escalator clause.

## 2.    Settlement Checks and Credits

The net Settlement Fund available to pay Class Members is $289,400.90, which was determined by subtracting the anticipated Class Representative incentive awards totaling $20,000.00, Class Counsels' requested fees of $183,333.33, Class Counsels' litigation expenses of $10,000.00, PAGA Payment of $37,500; and the Settlement Administration costs (estimated to be no more than $11,500 after completion) from the Settlement Fund.  Butler Decl. ¶ 11.  This sum was divided by the number of class members who did not opt out of the settlement.  Based on the available net Settlement Fund and, this equates to each Claimant receiving approximately $344.94 on average *Id*. ¶ 12.

## 3.    Class Representative's Incentive Payment

District Courts in California have opined that in many cases, an incentive award of $5,000 is presumptively reasonable. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. Mar. 20, 2015) – finding that "[i]n this district, a $5,000 payment is presumptively reasonable.  *See also In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 942-43 (9th Cir. Feb. 27, 2015) (finding that the District court did not abuse its discretion in approving settlement class in

antitrust class action, despite objector's contention that the nine class representatives were inadequate because their representatives' awards, at $5,000 each, were significantly larger than the $12 each unnamed class member would receive); *In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 472 (C.D. Cal. Jan. 17, 2014) (finding that Request for recovery of $5,000 incentive award for each named plaintiff in consumers' action against children's toy retailer alleging retailer violated the Fair and Accurate Credit Transactions Act (FACTA) by printing more than the last four digits of consumers' credit card numbers on customer receipts, was reasonable; parties' settlement agreement provided for incentive payments of $5,000 to each named plaintiff, those awards were consistent with the amount courts typically awarded as incentive payments). Incentive awards of $15,000-$20,000 have been found to be reasonable. *See, e.g.*, *In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) ($15,000 awarded to each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, No. 10-cv-463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011); *Raffin v. Medicredit, Inc*., Case No. CV 15-4912-MWF (PJWx), 2018 WL 6011551 (C.D. Cal. May 11, 2018) (preliminarily approving a $15,000 incentive award, and later granting the award at final approval).

Pursuant to the Agreement and the Preliminary Approval Order, and subject to Court's final approval, Defendant has agreed that the Plaintiffs may be paid from the Settlement Fund an incentive award of up to $10,000 each, in recognition of Plaintiffs' service as the Class Representatives (Agreement § III(F)(4) p. 15). The Court should approve the $10,000 incentive payments to compensate Plaintiffs for their time and efforts in litigating this case on behalf of the Class because, although slightly higher, it is in in line with the Ninth Circuit's directives in *Radcliffe v. Experian Info. Solutions, Inc.*, 2013 U.S. App. LEXIS 9126 (9th Cir. Mar. 4, 2013). Plaintiffs' efforts in this litigation are outlined in Plaintiffs' declarations, filed in support of Motion for Attorneys' Fees and Costs and Incentive Award.

### 4.    Attorneys' Fees and Costs

The Agreement permits Class Counsel to file an application for attorneys' fees, not to exceed 33.33% of the Settlement Fund (the benchmark in the Ninth Circuit is 25%, *Hanlon*, 150 F.3d at 1029), as well as litigation costs to be paid from the Settlement Fund, not to exceed $10,000.  (Agreement § III(F)(3) p. 14-15). The amount of Attorneys' fees requests ($183,333.33,) and litigation costs to date by Class Counsel is explained in more detail in Plaintiffs' Fee Brief.  The Court should approve the award of the requested attorneys' fees and costs to compensate Class Counsel for their time and efforts in litigating this case on behalf of the Class and the named Plaintiffs, having obtained good results for the Class.

### 5.    Administrator's Expenses For Notice and Administration

Defendant has agreed to pay all costs of notice and claims administration from the Settlement Fund up to an amount of $20,000.  Current estimates lace administration costs at $11,500.  Butler Decl. ¶ 11.

## IV.    <u>ARGUMENT</u>

### A.    <u>Final Approval of The Proposed Settlement Is Warranted</u>

The Court has already preliminarily found the requirements of Fed. R. Civ. P. 23 are satisfied.  *See generally* Preliminary Approval Order, Dkt. No. 21.  The relevant factors demonstrate that the proposed Settlement should be finally approved as fair, reasonable and adequate.  Since preliminary approval, Plaintiffs have continued to serve as an adequate Class Representatives by reviewing documents and submitting declarations in support of motions, including the present motion; and Plaintiffs support final approval of the proposed settlement. Moreover, Class Counsel have also continued to adequately represent the interests of the Class Members and the named Plaintiffs, having, among other things, timely disseminating Class Notice, communicating promptly with class members who contacted class counsel with questions, filing the Fee Brief, and assisting with settlement administration.

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications   Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." *Id*. at 965 (citing

*Hanlon*, 150 F.3d at 1027 (9th Cir. 1998)).  The district court must exercise "sound discretion" in approving a settlement.  *See Torrisi v. Tucson*

    *Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair."  *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819, 822 (D. Mass. 1987); *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Application of the relevant factors here confirms that the proposed settlement should be finally approved.  Notably, this Settlement was reached with the assistance of experienced mediator Steven Rottman, which shows a lack of collision between the Parties.  *See Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935, 948 (9th Cir. 2011).  Based on the facts of this case, Class Counsel and the named Plaintiffs agree that this settlement is fair and reasonable; among other things, the settlement will avoid costly and time-consuming additional litigation and the need for trial.  Friedman Decl., ¶¶ 17-20.

## 1. The Strength of The Lawsuit And The Risk, Expense, Complexity, And Likely Duration of Further Litigation

Defendants have vigorously contested the claims asserted by Plaintiffs in this Litigation.  Defendants' position throughout the case was multifaceted and presented steep procedural and factual hurdles, which were given fair weight at mediation.  Defendants implemented a non-mandatory dispute resolution policy dating back to 2013.  That policy included an arbitration agreement with a class action waiver.  Mr. Cawthorne elected to participate in class action lawsuits, but nearly all of the other Class Members did elect to waive their ability to proceed or participate in class actions.  In discovery, it was determined that approximately 70%

of the Class entered into such agreements, with over 80% of the Class Members at the location Cawthorne worked (Fontana) having entered into such agreements. Defendants took the position that Cawthorne would not be able to represent the majority of Class Members in the event of a contested class certification motion, due to the existence of binding arbitration agreements with class action waivers. This was a legitimate concern, as evidenced by recent binding precedent from the Ninth Circuit and Supreme Court.  See *O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087 (9th Cir. 2018) (reversing certification of employment class action due to existence of binding arbitration agreements, and overbroad class definition); and *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018).  The arbitration agreements for the majority of the class were a serious and legitimate hurdle at the certification phase of the case, despite Cawthorne not having entered into such an agreement.

Regarding merits issues, Defendants disputed that it paid only for active repair order time for technicians, and took the position that it paid for time in between jobs.  Defendants also took the position that the circumstances experienced by Cawthorne would have been limited to the Fontana shop where he worked, not other locations.  Defendants' written formal pay plans and policies with respect to Class Members complied with California law, after discovery was conducted on the issue.  Thus Defendants argued that individualized issues would defeat certification.  In addition, regarding meal and rest breaks, Defendants pointed to its compliant written policies and procedures, as well as the sample of time records produced in discovery, which, at least with respect to meal breaks, evidenced substantial compliance, and a low violation rate, which affected both the damages analysis, as well as the risk that the claim would not be certified.  Defendants pointed out that because its written policies and procedures complied with California law, that any violations which occurred were a result of good faith, and were not willful, which meant that it would be difficult for Plaintiffs to recover penalties on behalf of the Class Members under Labor Code 203 and 226.

Ultimately, the existence of complaint policies, time records which generally

showed substantial compliance, and arbitration agreements in place for the vast majority of the Class Members made the case challenging from a merits perspective, a damages perspective, and a procedural perspective.  These defenses were all given weight in the context of mediation, with the scrutiny of experienced and informed class counsel, and with the oversight of an experienced wage and hour class action mediator.  These facts and evidence cast doubt on damages issues as well, as described in the accompanying declaration of class counsel.  Bacon Decl Prelim. ¶¶ 20-46.  Notably, with respect to PAGA penalties, recent California appellate law demonstrates the discretion of trial courts in determining how steeply to reduce penalties when an employer takes good faith measures to comply.  See *Carrington v. Starbucks Corporation*, (Ct. App. 4th Dist. Div. 1, Cal. Dec. 19) Case No. D072392, 2018 WL 6695970 (certified for publication) (reducing PAGA, 2018 meal break penalties from a potential of $70 million to $150,000 at judgment due to evidentiary showings of substantial compliance.)

     In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class including the significant benefit and the deterrent effects it would have.  Friedman Decl., ¶¶ 17-20.  As a result, Class Counsel supports the Settlement and seeks its Final Approval.  *Id*.  Similarly, Defendant believes that it has strong and meritorious defenses to the action as a whole, as well as to class certification and the amount of damages sought.  The negotiated Settlement is a compromise avoiding the risk that the class might not recover and presents a fair and reasonable alternative to continuing to pursue the Action as a class action for alleged violations of the California Labor Code. What is more, Steven Rottman, who is intimately familiar with the instant litigation as well as the current climate of Employment litigation as a whole, agrees with the parties.

## 2.    The Amount Offered In Settlement

     As set forth above, Defendant has agreed to a common fund settlement in the amount of $550,000.  After administration costs, proposed attorney's fees, costs of

suit, employer taxes, and the proposed incentive award, Settlement Class Members will collectively receive at least $289,400.90 of these available funds. The amount of the check shall be calculated by the Claims Administrator based on the number of workweeks worked by each Class Member, which currently equates to approximate recoveries of $344.94 on average, and up to $1,041.10 per Class Member who did not opt out. Friedman Decl., ¶¶ 33-34.

Class Member data provided to the Claims Administrator in the course of disseminating Notice verifies that the Class is comprised of 848 unique individuals. The net recovery, after fees and costs, to each Class Member will be approximately $344.94 on average for each Class Member. This is a highly favorable per-person recovery for the Class. Moreover, this outstanding result was achieved without having to subject Settlement Class members to the substantial risks ahead in litigation, which include having to achieve class certification, and surviving a motion for summary judgment premised on Defendant's arguments.

The settlement award that each Class Member will receive is fair, appropriate, and reasonable given the purposes California's employment laws, the limitations of class-wide liability, and in light of the anticipated risk, expense, and uncertainty of continued litigation. Although it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial, here, the Settlement provides significant and meaningful relief that is comparable to what the Class Members would receive if Plaintiff was able to prevail on class certification, took the case to trial and obtained a judgment.[3] Moreover, Class Members were able to avoid the time, expense and risk associated with bringing individual actions.

_____

[3] *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be

### 3. Class Members were provided with the best notice possible, which afforded them an opportunity to choose whether to participate in the Settlement

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabo*n, 18 F. 3d 1449, 1454 (9th Cir. 1994). Final approval of the Settlement should be granted when considering the notice provided to the Class Members, i.e., over 99% of the Class Members successfully received direct mail notice. *See* Cooley Decl., ¶¶ 9-10; Friedman Decl., ¶ 23.

It is also noteworthy that the settlement received highly positive responses from Class Members, as illustrated by the lack of objections. Moreover, it is well-settled that a proposed settlement may be accepted where the recovery represents a fraction of the maximum potential recovery. *See e.g.*, *Nat'l Rural Tele. Coop v. DIRECTV, Inc.*, 221 F.R.D 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement that comprised one-sixth of plaintiffs' potential recovery). Again, despite this general acceptance, the settlement at issue here results in the Class receiving comparable relief to what they would potentially be able to receive in a judgment. It is an outstanding settlement in every respect.

---

considered in light of strength of the claims"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery); *In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000).

The Claims Administrator sent postcard notice to 848 potential Class Members, identified by Defendant's records (explained above). All but a small percentage of Class Members was reached, ultimate resulting in over 99% of Class Members having received direct mail notice of the settlement. See Butler Decl., ¶ 9. This was excellent notice and the best notice practicable for the Class Members.

### 4.    The Extent of Discovery Completed

The proposed Settlement is the result of intensive arms-length negotiations, which included several exchanges of discovery into the nature of the practices, and the size of the Class affected by them. The parties also engaged in a full-day mediation session before Steven Rottman. Prior to the mediation, the Parties engaged in both formal and informal discovery surrounding Plaintiff's claims and Defendant's defenses. The Parties also participated in direct discussions about possible resolution of this litigation, including numerous telephonic conferences, which ultimately resulted in a general understanding of the Settlement terms.

The important information needed in these cases is primarily how many Class Members' were subjected to the practices at issue, how many class members there are, their rates of pay, and how many work weeks they worked. This information was obtained through both formal and informal discovery. Thus, the litigation here had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *Warner Communications*, 618 F. Supp. at 745.

### 5.    The Experience And Views of Class Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel. *See M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("that experienced counsel involved in the case approved the settlement after

hard-fought negotiations is entitled to considerable weight"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual for Complex Lit., Fourth § 30.42.

Here, it is the considered judgment of experienced counsel that this settlement is a fair, reasonable and an adequate settlement of the litigation. See Friedman Decl., ¶¶ 17-20. Class Counsel are experienced consumer class action lawyers. This Settlement was negotiated at arms' length by experienced and capable Class Counsel who now recommend its approval. Friedman Decl., ¶¶ 17-20. Moreover, the Settlement was reached after the assistance of Steven Rottman. Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class. Class Counsel have achieved such a result here in this class action, and unequivocally assert that the proposed Settlement should receive final approval.

### 6.    The Reaction of Class Members To The Settlement

The fact that there are now zero objections and only 9 valid opt outs from the approximately 848 Class Members should say all that needs to be said about the outstanding settlement that was reached here for the Class. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *Warner Communications*, 618 F. Supp. at 746; *Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855, *21 (N.D. Cal. Mar. 31, 2014) (only specific objections or comments from 9 class members, and 239 out of the approximately 8 million class members chose to opt out). There has been little resistance to the Settlement. Butler Decl ¶¶ 13-14.

## V.    <u>CONCLUSION</u>

In sum, the Parties have reached this Settlement following extensive arms' length negotiations, including with the assistance of Steven Rottman. The Settlement is fair and reasonable to the Class Members who were afforded notice that complies with due process. For the foregoing reasons, Plaintiffs respectfully requests that the Court:

- Grant final approval of the proposed settlement;

- Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Agreement;
- Grant the Motion For Attorney's Fees, Costs, and Incentive Payment;
- Enter the proposed Final Judgment and Order of Dismissal With Prejudice submitted herewith; and,
- Retain continuing jurisdiction over the implementation, interpretation administration and consummation of the Settlement.

Date: June 24, 2019                    **The Law Offices of Todd M. Friedman, PC**

                                       By: /s/ Todd M. Friedman
                                       Todd M. Friedman
                                       Adrian R. Bacon
                                       *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on this 24th day of June, 2019, with:

United States District Court CM/ECF system

Notification sent electronically on this 24th day of June, 2019, to:

Honorable Jesus G Bernal
United States District Court
Central District of California

And all Counsel of Record as recorded on the Electronic Service List.

<u>s/Adrian R. Bacon</u>
Adrian R. Bacon, Esq.