UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-1541 JGB (SPx)** | Date | August 13, 2019 |
|---|---|---|---|

Title   ***Brian Cawthorne, et al. v. Rush Truck Centers of California, Inc.***

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   Order (1) GRANTING Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. No. 25); and (2) GRANTING Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 26)**

On June 24, 2019, Named Plaintiffs Brian Cawthorne and Francisco Xavier Valdez filed a Motion for Final Approval of Class Settlement ("MFA," Dkt. No. 25) and a Motion for Attorneys' Fees ("MAF," Dkt. No. 26). These matters are unopposed. The Court held a hearing on these matters on August 12, 2019. Upon consideration of the papers filed in support of these motions, as well as oral arguments presented by the parties, the Court GRANTS Plaintiffs' Motions.

## I.  BACKGROUND

On June 29, 2017, Cawthorne filed a Complaint in the Superior Court of California, County of San Bernardino. ("Complaint," Dkt. No. 1-1.) Defendant Rush Truck Centers of California, Inc. ("Rush Truck") removed the action to this Court on August 2, 2017. (Dkt. No. 1.) On January 10, 2019, the Court granted a stipulation to file a first amended complaint. (Dkt. No. 18.) On January 17, 2019, Plaintiffs filed a First Amended Complaint. ("FAC," Dkt. No. 19.) The FAC adds Valdez as a Plaintiff. (Id.) It also adds the following defendants: Rush Enterprises, Inc., Rush Administrative Services, Inc., and Rush Truck Leasing, Inc. (Id.) All Defendants operate and do business as "Rush Truck Centers of California, Inc." (Id. ¶ 19.) The FAC alleges eleven causes of action: (1) minimum wage violation (Cal. Lab. Code §§ 558, 1194, 1194.2, 1197, 1198 and Wage Orders 4, 9); (2) overtime and double time wage violation (Cal. Lab. Code §§ 218.6, 558, 1194 and Wage Orders 4, 9); (3) rest period violation (Cal. Lab. Code §§ 226.7, 558, 1198 and Wage Orders 4, 9); (4) meal period violation (Cal. Lab. Code §§ 226.7,

512, 558, 1198 and Wage Orders 4, 9); (5) reporting time violation (Wage Orders 4, 9); (6) itemized wage statement penalties (Cal. Lab. Code §§ 226, 558); (7) waiting time penalties (Cal. Lab. Code §§ 201-203, 558); (8) failure to reimburse business expenses (Cal. Lab. Code § 2802); (9) Labor Code Penalties (Cal. Lab. Code § 558); (10) failure to pay reporting time wages (Wage Orders 4, 9); and (11) Unfair Competition Law ("UCL") violation (Cal. Bus. & Prof. Code § 17200 et seq. (Id.)

On March 18, 2019, the Court granted preliminary approval of this class action settlement and granted conditional certification of the proposed settlement class. ("Preliminary Approval Order," Dkt. No. 21.) In the Preliminary Approval Order, the Court ordered:

1.  The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate for members of the Settlement Class.

2.  The following Settlement Class is certified for settlement purposes only: any individual currently or formerly employed by Defendants as non-exempt hourly employees at any point from June 29, 2013 to August 31, 2018.

3.  The Court appoints Todd M. Friedman and Adrian R. Bacon of the Law Offices of Todd M. Friedman, P.C. and Graham Hollis of Graham Hollis APC as counsel on behalf of the Settlement Class for purposes of settlement only.

4.  Plaintiffs Brian Cawthorne and Francisco Xavier Valdez are appointed as the representatives of the Settlement Class for purposes of settlement only.

5.  The Court appoints Simpluris, Inc. as the settlement administrator.

6.  The Notice of Class Action Settlement is approved on the condition that Plaintiffs add to the Class Notice contact information for Class Counsel.

7.  Provided that Plaintiffs add Class Counsel's contact information to the Class Notice, the Court authorizes mailing of Class Notice to the settlement class members by first-class United States mail pursuant to the Settlement Agreement.

8.  The hearing date for the Final Fairness Hearing is hereby set for July 22, 2019 at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division located at 3470 12th Street, Riverside, California 92501.

(Id. at 17.) On April 12, 2019, the parties filed a stipulation. ("Stipulation," Dkt. No. 23.) The stipulation proposed the following changes: (1) payments remaining uncashed after 90 days will be donated to Public Justice, P.C. rather than to the State of California; (2) the settlement class definition expressly excludes individuals who have previously released claims in a settlement prior to the date of preliminary approval; and (3) all dates, including the date of the Final

Approval Hearing, will be continued 21 days.  (Id.)  The Court approved the stipulation and continued the Final Approval Hearing to August 12, 2019 at 9:00 a.m.  (Dkt. No. 24.)

On June 24, 2019, Plaintiffs filed these Motions.  In support of the MFA, Plaintiffs filed the following documents:

- Declaration of Todd M. Friedman ("Friedman MFA Declaration," Dkt. No. 25-1);
- Declaration of Brian Cawthorne ("Cawthorne Declaration," Dkt. No. 25-2);
- Declaration of Francisco Valdez ("Valdez Declaration," Dkt. No. 25-3);
- Declaration of Mary Butler ("Butler Declaration," Dkt. No. 25-4); and
- Proposed Order (Dkt. No. 25-5).

In support of the MAF, Plaintiffs submitted an additional declaration of Todd M. Friedman.  ("Friedman Fees Declaration," Dkt. No. 26-1.)  On July 25, 2019, the Court received an objection to the Settlement dated June 7, 2019 from Christopher M. Cleveland.  ("Cleveland Objection," Dkt. No. 27.)  Plaintiffs filed a reply on July 28, 2019.  ("Reply," Dkt. No. 28.)  Attached to the reply is the declaration of Adrian Bacon.  ("Bacon Reply Declaration," Dkt. No. 28-1.)  On August 12, 2019, the Court held a Final Approval Hearing.

## II.   THE SETTLEMENT AGREEMENT

Plaintiffs filed a copy of the Settlement Agreement as an attachment to the declaration of Adrian Bacon in support of their motion for preliminary approval.  ("Settlement Agreement," Dkt. No. 20-1.)  The Court preliminarily approved the Settlement Agreement on March 18, 2019.  The terms of the Settlement Agreement are discussed below.

### A.  Settlement Class

The settlement class is defined to include: "individuals who are or were previously employed (1) by any Defendant; ([2]) in a Covered Job Position; ([3]) at any point during the Class Period."  (Settlement Agreement § I.X.)  The class period covers the time from June 29, 2013 through August 31, 2018.  (Id. § I.D.)  A "Covered Job Position" means "any nonexempt employee of any Defendant working in California during the Class Period.  Covered Job Positions include, but are not limited to[,] Technicians, Service Technicians, and Mobile Technicians."  (Id. § I.F.)  The class does not include individuals who have previously released their claims through settlement.  (See Stipulation.)  After finalizing the class list, the class consists of 848 individuals—approximately 200 more than anticipated.  (Compare "MPA," Dkt. No. 20 at 5 with MFA at 7.)

### B.  Financial Terms

Below is an overview of the financial terms of the Settlement Agreement:

- Gross Settlement Amount:                                        $551,734.23[1]
- Attorneys' Fees:                                               $183,333.33[2]
- Litigation Costs:                                              $10,000
- Settlement Administration Costs:                               $11,500
- Service Award to Class Representatives:                        $20,000
- PAGA Payment to the LWDA:                                      $37,500
- Net Settlement Amount:                                         $289,400.90

The Settlement Agreement is non-reversionary.  (Settlement Agreement § III.D.)  All checks not cashed within 90 days after mailing will be donated to Public Justice, P.C.  (Id. § III.F.10; Stipulation.)

### 1. Class Representatives

The Settlement Agreement provides for a service award up to $10,000 each for Cawthorne and Valdez.  (Settlement Agreement § III.F.4.)  This totals $20,000 of the gross settlement amount.  Cawthorne and Valdez seek the Court's approval for the full $10,000 award each.  (See MAF at 15-16.)

### 2. California Labor and Workforce Development Agency ("LWDA") Payment

The parties allocated $50,000 as a PAGA award, of which 75% ($37,500) will be paid to the LWDA with the balance staying in the net settlement amount for distribution to the settlement class.  (Settlement Agreement § III.F.6.)

### 3. Settlement Administration Costs

The settlement administrator, Simpluris, Inc., will be paid from the gross settlement amount for the cost of administering the Settlement Agreement.  (Id. § III.F.2.)  The Settlement Agreement estimates a settlement administration cost of $20,000 (Id.)  Plaintiffs now move for $11,500 in administration costs.  (See MFA at 10; Butler Decl. ¶ 11.)

### 4. Attorneys' Fees and Costs

Class Counsel seeks an award of attorneys' fees at 33.33% of the original $550,000 gross settlement amount and costs of $10,000.  (MFA at 5 n.2; MAF at 2.)

---

[1] The increase in the settlement amount is the result of a larger class than the parties initially anticipated.  (MFA at 2 n.1, 5 n.2, 7-8.)

[2] Although the settlement fund is greater than anticipated at the preliminary approval stage due to an increase in class size, Class Counsel still seeks fees based on a percentage of the original negotiated settlement amount.  (See MFA at 5 n.2; MAF at 2.)

**5.  Settlement Class Members**

Each class member is eligible to receive payment and is not required to submit a claim form to receive payment under the Settlement Agreement.  (Settlement Agreement § III.D.)  Each class member will automatically be issued payment if they do not timely and validly request exclusion.  (Id. § III.D.1.)  The portion of the net settlement amount payable to each class participant shall be calculated as follows:

> an individual Settlement Class Member's workweeks worked in the Class Period are divided by the total number of all Settlement Class Members' workweeks worked in the Class Period, the result of which is then multiplied by the Net Settlement Amount, as reflected in the following formula:



(Id. § III.F.7.)  Any funds allocated to class members who request exclusion from the settlement will be re-allocated to participating class members on a pro rata basis.  (Id. § III.F.8.)  At the preliminary approval stage, the parties estimated there would be approximately 645 class members and an average recovery of $432.82.  (MPA at 5.)  However, the final class list includes approximately 848 individuals.  (MFA at 18.)  The Settlement Agreement provides that if the number of class members and number of workweeks increase by more than 10% each, Defendants agree to a proportionate increase in the net settlement amount for each workweek beyond that 10% threshold ("Escalator Clause").  (Settlement Agreement § III.F.17.)  The increase in the number of workweeks was 446.36 workweeks over the 10% threshold.  (MFA at 8.)  As a result, the Escalator Clause provides for a $1,734.23 increase to the gross settlement amount and will be distributed directly to class members.  (Id.)  This brings the gross settlement amount to $551,734.23.

If the Court awards the requested attorneys' fees and costs, settlement administration costs, and incentive awards, the net settlement amount is $289,400.90.  839 individuals will receive payment under the settlement with an average payment of $344.94.  (Butler Decl. ¶¶ 10, 12.)  Under this calculation, the average payment is 20% less than anticipated at the preliminary approval stage.  Class Counsel explains that the lower average payment is due to a large influx of new hires toward the end of the class period.  (Friedman MFA Decl. ¶ 31.)  They further note these new members will receive little of the settlement fund because payments are connected to the number of workweeks.  (Id.)

**C.  No Public Statements**

The Settlement Agreement prohibits settlement class members from holding press conferences, issuing press releases, seeking any publicity, or publishing any announcements on

any website concerning this matter.  (Id. § III.G.)  This particular requirement was not
mentioned in the Class Notice.

## D.  Injunctive Relief

The Settlement Agreement does not include injunctive relief.

## E.  Release

Class members who did not timely opt out of this Settlement Agreement release:

> each and all of the Released Parties[3] from (i) the Released Claims[4], and (ii)
> any and all claims (including unknown claims) including, but not limited to,
> claims that were asserted or could have been asserted at any time in the

---

[3] "Released Parties" refers to:

Defendants and their past and present parents, subsidiaries and affiliates, and their
respective present and former officers, directors, stockholders, agents, employees, insurers, co-
insurers, reinsurers, attorneys, accountants, auditors, advisors, representatives, consultants,
pension and welfare benefit plans, plan fiduciaries, administrators, trustees, partners,
predecessors, successors, and assigns.

(Settlement Agreement § I.U.)

[4] "Released Claims" refers to:

all claims, demands, rights, liabilities, and/or causes of action of any nature and
description whatsoever, known or unknown, in law or in equity, whether or not concealed or
hidden, that were asserted or could have been asserted at any time in the Litigation based on the
facts, theories, and/or claims alleged in the Litigation; it includes and covers claims for violations
of any state or federal statutes, rules or regulations, claims that were asserted or could have been
asserted at any time in the Litigation based on the subject matter alleged in the Litigation by any
Settlement Class Member that, during the Class Period, Defendants at any time: (1) failed to pay
wages, including failure to pay minimum wages, sick pay, and reporting time pay; (2) failed to pay
overtime and/or doubletime wages; (3) failed to timely provide rest breaks or a penalty payment
in lieu thereof; (4) failed to provide timely meal periods or a penalty payment in lieu thereof; (5)
failed to pay for reporting time and failure to pay reporting time penalties; (6) failed to provide an
accurate itemized wage statement; (7) failed to timely pay wages or pay all wages due upon
termination of employment; (8) failed to reimburse expenses; (9) failed to provide penalties
provided for in Labor Code section 558; (10) failed to provide restitution for unpaid sums; (11)
violated of Business & Professions Code section 17200 et seq.; (12) failed to maintain accurate
records; (13) owe penalties under the Private Attorneys General Act for any violation of the
Labor Code (Labor Code section 2698, et seq.).

(Settlement Agreement § I.T.)

---

Litigation based on the subject matter alleged in the Litigation, including but not limited to common law claims.

(Id. § V.A.)  Participating settlement class members also waive California Civil Code Section 1542[5] with respect to their released claims only.  (Id.)  Thus, each class member who does not opt out of the Settlement Agreement "shall be deemed to have acknowledged that this Agreement is intended to include in its effect all Released Claims that they do not know or suspect to exist in their favor at the time of the final approval of this Agreement."  (Id.)  This waiver of benefits afforded by Section 1542 <u>does not</u> apply to claims not encompassed in the Released Claims.  (Id.)

Finally, participating settlement class members are deemed to have opted into the settlement for purposes of the Fair Labor Standards Act ("FLSA").  "Each Participating Settlement Class Member who endorses or cashes the check representing the Individual Settlement Share shall be deemed to have opted-in for purposes of the FLSA claims referred to in the Action and this Agreement."  (Id.)

## F.  Notice and Administration

The Settlement Agreement provided the following procedure to notify class members of the Settlement Agreement.  (Settlement Agreement § III.C.)  Within 20 days after preliminary approval of the settlement, Defendants will provide the settlement administrator with a class list containing each class member's social security number, last known address, and dates of employment during the Class Period.  (Id. § III.C.1.a.)  Within 10 days of receiving the class list, the settlement administrator will mail the Class Notice and Opt-Out Form via First-Class mail to the last known address of each settlement class member.  (Id. § III.C.1.b; "Class Notice," Dkt. No. 20-1 Ex. B; "Opt-Out Form," Dkt. No. 20-1 Ex. C.)  The settlement administrator will include with these items a Statement of Workweeks which will state the dates a particular class member worked during the class period, the total number of workweeks in the class, and the individual's estimated settlement share.  (Settlement Agreement § III.C.1.c; "Statement of Workweeks," Dkt. No. 20-1 Ex. D.)  For notice packets returned as undeliverable, the settlement administrator will obtain a valid mailing address using Equifax, National Change of Address, and skip trace.  (Settlement Agreement § III.C.1.d.)  The settlement administrator will re-mail the notice packet to the address identified in this search.  (Id.)

The approved Class Notice contained the following: (1) information about the lawsuit; (2) the definition of the class; (3) a summary of the Settlement Agreement's financial terms; (4) the formula for calculating individual settlement shares; (5) an explanation of the release of claims; (6) procedures and deadlines for how to dispute the number of qualifying workweeks, how to object, and how to request exclusion; (7) references to sources from which class members can get information about the settlement agreement; and (8) the date and time of a Final Approval

---

[5] Section 1542 provides: "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Hearing.  (See Class Notice.)  As noted above, a class member's estimated number of qualifying
workweeks and estimated settlement share was included in the Notice Packet.

To dispute the qualifying number of workweeks, a class member must have provided
corrected information on the bottom half of the Statement of Workweeks and returned the form
to the settlement administrator.  (Statement of Workweeks.)  The class member must have
provided the corrected number of workweeks and attach any supporting documentation.  (Id.)

Class members who did not timely request exclusion from the Settlement are deemed to
participate in the Settlement and are settlement class member without having to submit a claim
form or take any other action.  (Settlement Agreement § III.D.1.)  To request exclusion from the
Settlement, the class member must submit the Opt-Out Form to the settlement administrator
within 30 days after the date the notice packet is mailed.  (Id. § III.D.2.)  If 3% or more of the class
members request exclusion from this Settlement, Defendants have the option to withdraw from
the Settlement within ten days of the date on which they receive notice that 3% or more of the
settlement class requested exclusion.  (Id. § IV.D.2.)

The Class Notice also informs class members of their right to object to the Settlement.
(See Class Notice.)  Any class member objecting to the Settlement must have submitted a written
objection to the settlement administrator no more than 30 days after receiving the Class Notice.
(Settlement Agreement § IV.D.3.)  The Class Notice instructs that an objecting class member
must file their written objection with the Court and send the objection to Class Counsel, Defense
Counsel, and the settlement administrator.  (Class Notice.)  The objection must have contained
the following: (1) full name, address, and dates of employment; (2) the basis for the objection
with any legal support in clear and concise terms; and (3) whether the objecting class member
intends to appear at the Final Approval Hearing.  (Id.)

On May 9, 2019, after updating the mailing addresses, the claims administrator mailed the
notice packets.  (Butler Decl. ¶ 8.)  The claims administrator performed skip trace searches on
and re-mailed all packets returned as undeliverable.  (Id. ¶ 9.)  Only two notice packets remained
undeliverable.  (Id.)  No class members objected to the settlement and 9 individuals requested
exclusion.  (Id. ¶¶ 13-14.)[6]



———————————

[6] The Court received a copy of the June 7, 2019 Cleveland Objection.  However, on June
10, 2019, Mr. Cleveland contacted class counsel.  (Bacon Reply Decl. ¶ 3.)  Counsel explained
that Mr. Cleveland could object, but remain bound by the settlement, or opt-out and preserve his
right to bring his own action.  (Id.)  Mr. Cleveland expressed his desire to opt-out.  (Id.)  He faxed
his opt-out form and requested that Counsel forward it to the settlement administrator.  (Id.
¶¶ 3-4.)  The Butler Declaration counts Mr. Cleveland as one of the individuals who validly
requested exclusion.  (Id. ¶ 13.)  Accordingly, the Court need not consider Mr. Cleveland's
objection, as he subsequently removed himself from the class and no longer has standing.

### III.   LEGAL STANDARD

**A.  Class Action Settlement**

Class action settlements must be approved by the Court.  See Fed. R. Civ. P. 23(e).
Whether to approve a class action settlement is "committed to the sound discretion of the trial
judge."  Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  A strong judicial policy
favors settlement of class actions.  See id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness.  See
Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Neither district courts nor
appellate courts have the power to delete, modify, or substitute provisions in the negotiated
settlement agreement.  See id.  "The settlement must stand or fall in its entirety."  Id.

In order to approve the class action settlement herein, the Court must conduct a three-
step inquiry.  See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).
First, it assesses whether the parties have met notice requirements under the Class Action
Fairness Act ("CAFA").  Id.  Next, it determines whether the notice requirements of Federal
Rule of Civil Procedure 23(c)(2)(B) have been satisfied.  Id.  Finally, the Court must find that the
proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3).  Id.

**B.  Attorneys' Fees**

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2).  While the rule
specifies requests shall be made by motion "unless the substantive law governing the action
provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does
not itself authorize the awarding of fees.  "Rather, [Rule 54(d)(2)] and the accompanying
advisory committee comment recognize that there must be another source of authority for such
an award . . . [in order to] give[ ] effect to the 'American Rule' that each party must bear its own
attorneys' fees in the absence of a rule, statute or contract authorizing such an award."  MRO
Commc'ns, Inc. v. AT&T, 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American
Rule" provide the authority for awarding attorneys' fees.  See Alba Conte and Herbert B.
Newberg, Newberg on Class Actions, § 14.1 (4th ed. 2005) ("Two significant exceptions [to the
"American Rule"] are statutory fee-shifting provisions and the equitable common-fund
doctrine").  Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable
costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. Proc. 23(h).  Under
normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t
remains for the district court to determine what fee is 'reasonable.'"  Hensley v. Eckerhart, 461
U.S. 424, 433 (1983).

///
///

---

## IV.    RULE 23 REQUIREMENTS

### A.   Class Action Fairness Act ("CAFA")

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is
> filed in court, each defendant that is participating in the proposed
> settlement shall serve [notice of the proposed settlement] upon the
> appropriate State official of each State in which a class member resides
> and the appropriate Federal official. . . .

28 U.S.C. § 1715(b).

The statute provides detailed requirements for the contents of such a notice.  Id.  A court
is precluded from granting final approval of a class action settlement until the notice requirement
is met:

> An order giving final approval of a proposed settlement may not be
> issued earlier than 90 days after the later of the dates on which the
> appropriate Federal official and the appropriate State official are
> served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

Here, Defendants removed this action under CAFA.  (Dkt. No. 1 ¶¶ 9-19.)  The MFA
does not indicate that Defendants have caused notice of the proposed settlement to be served to
the appropriate officials.  At the hearing, Defendants represented they served CAFA notice to
the appropriate officials more than 90-days before the Final Approval Hearing.  Accordingly, the
notice requirements of 28 U.S.C. § 1715 have been satisfied.

### B.   Rule 23(a) and (b)

In its Preliminary Approval Order, the Court certified the Class in this matter under
Rules 23(a) and 23(b)(3).  (Preliminary Approval Order at 3–6.)  Accordingly, the Court "need
not find anew that the settlement class meets the certification requirements of Rule 23(a) and
(b)."  Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, No. C–08–5198, 2012
WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it
previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the
requirements for certification have been met and may focus instead on whether the proposed
settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation,
Nos. CV 04–2147–PHX–JAT, CV 04–2204–PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL
1378677 at *4 (D. Ariz. Apr. 20, 2012).  Here, the Class has not meaningfully changed since it
was conditionally certified.  The parties added language expressly excluding from the class

individuals who have previously settled their claims.  (See Stipulation.)  This does not change the Court's analysis.  All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Class.

## C.  Rule 23(c)(2)

Rule 23(c)(2)(B) requires the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e)(1) requires a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement.  Fed. R. Civ. P. 23(e)(1).  In its Preliminary Approval Order, the Court approved the notice sent to class members.  (Preliminary Approval Order at 15-16.)  The Court also continued the Final Approval Hearing and ordered that the class notice shall be updated consistently.  (Dkt. No. 24.)  The claims administrator timely mailed the Notice Packet.  (Butler Declaration ¶¶ 8–9.)  The Court therefore finds that notice to the Class was adequate.

## D.  Rule 23(e)

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982).  The Court's inquiry is procedural in nature.  Id.  Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Court held a final approval hearing on August 12, 2019.  In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed, and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) any opposition by class members.

<u>Linney v. Cellular Alaska P'ship</u>, 151 F.3d 1234, 1242 (9th Cir. 1998).  This list of factors is not
exclusive, and a court may balance and weigh different factors depending on the circumstances of
each case.  <u>See</u> <u>Torrisi v. Tucson Elec. Power Co.</u>, 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1.  Strength of Plaintiffs' Case

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits.  <u>See</u>
<u>Rodriguez v. W. Publ'g Corp.</u>, 563 F.3d 948, 964–65 (9th Cir. 2009).  In determining the
probability of Plaintiffs' success on the merits, there is no "particular formula by which that
outcome must be tested."  <u>Id.</u> at 965.

Here, Plaintiffs acknowledge weaknesses in their claims and the possible range of
recovery.  (MFA at 12-14.)  Defendants maintain an arbitration agreement with a class action
waiver.  (<u>Id.</u> at 12.)  Cawthorne elected to participate in class action suits, but approximately 70%
of the class entered into the arbitration agreements.  (<u>Id.</u> at 12-13.)  Defendants asserted
Cawthorne could not represent the class under such circumstances.  (<u>Id.</u> at 13.)  This concern is
all the more pressing after the Ninth Circuit reversed class certification due to binding arbitration
agreements.  (<u>Id.</u> (citing <u>O'Connor v. Uber Techs., Inc.</u>, 904 F.3d 1087 (9th Cir. 2018).)
Through discovery, Plaintiffs also determined Defendants' written policies and a sample of time
records reflect substantial compliance and low violation rates which would drive down damages.
(<u>Id.</u>)

Given the challenges Plaintiffs face in continued litigation over such issues, the Court
finds this factor weighs in favor of approval.  <u>See</u> <u>Barbosa v. Cargill Meat Solutions Corp.</u>, 1:11-
CV-00275-SKO, 2013 WL 3340939, at *12 (E.D. Cal. July 2, 2013) ("Plaintiffs' likelihood of
success appears to have been properly accounted for in the settlement amount.")

### 2.  Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the
Court evaluates the time and cost required.  "[U]nless the settlement is clearly inadequate, its
acceptance and approval are preferable to lengthy and expensive litigation with uncertain
results."  <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 526 (C.D. Cal.
2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

Here, without settlement, the parties would continue litigating the class certification issue
as well as the ultimate merits of the case – a long, complex, and expensive process.  Therefore,
the settlement avoids further protracted and expensive litigation.  Accordingly, the Court finds
this factor weights in favor of settlement approval.

### 3.  Risk of Maintaining Class Action Status Throughout the Trial

Under Rule 23, a court may revisit its prior grant of certification prior to final judgment.
Fed. R. Civ. P. 23(c)(1)(C) ("An order under that grants or denies class certification may be

altered or amended before final judgment"). Here, the Court has only conditionally certified the Class. Plaintiffs note Defendants raise a defense to certification by asserting the arbitration agreements preclude certification and that individual issues predominate. (MFA at 13.) Thus, on balance, this factor favors approval. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (explaining that circumstances could arise justifying decertification and thus the factor weighed in favor of approving the settlement).

### 4.  Amount Offered in Settlement

The amount offered in the Settlement Agreement weighs in favor of final approval. Plaintiffs explain the average per person recovery is $344.94, with the highest recovery as $1,041.10. (MFA at 15.) Class Counsel asserts this is "a highly favorable per-person recovery" for the class. (Id.) Plaintiffs' MFA provides no discussion of their damages analysis to determine whether the amount offered is fair. However, the Court notes it already considered a detailed discussion of Plaintiffs' damages analysis in the MPA. (See Preliminary Approval Order at 12.) In the Preliminary Approval Order, the Court noted that Class Counsel estimated a maximum recovery of $12 million, making the settlement 4.6% of that amount. (Id.) However, Class Counsel explained that the decision in O'Connor, 904 F.3d 1087, exposed the action to significant risk. (Id.) After adjusting for certification risks and finding Defendants' written policies were substantially compliant with California law, Class Counsel applied a risk adjustment of 90% or higher to each claim, valuing the case at $865,000. (Id.) The settlement amount is approximately 64% of this risk-adjusted valuation. Given the potential defenses Defendants could put forward, including an argument against class certification, the Court finds the amount offered here to be appropriate.

### 5.  Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239. Plaintiffs represent they exchanged discovery including thousands of pages of documents. (Friedman MFA Decl. ¶ 5.) In preparation for mediation, the parties conducted further formal and informal discovery concerning: (1) the size and composition of the class; (2) information about Defendants' timekeeping practices; (3) a sample of time and payroll records; and (4) production of Defendants' written wage and hour policies and procedures. (Id. ¶ 6.) On May 31, 2018, the parties participated in a full-day mediation with Steven J. Rottman. (Id. ¶ 5.) Based on these efforts, the Court finds the parties have developed a clear idea of the strengths and weaknesses of their respective cases. See Lewis v. Starbucks Corp., No. 2:07-cv-00490-MCE, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases."). This factor favors final approval.

///
///
///

### 6. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel have substantial experience in prosecuting, defending, and negotiating the settlement of employment wage and hour class actions. (See "Bacon Declaration," Dkt. No. 20-1 ¶ 47-49; "Hollis Declaration," Dkt. No. 20-2 ¶¶ 12-13, 15-16.) Class Counsel recommends approval of the Settlement and believe it is fair, adequate, reasonable, and in the best interests of the Class. (Friedman MFA Decl. ¶ 17-20.) As a result, the experience and views of class counsel weigh in favor of final approval.

### 7. Presence of a Governmental Participant

No governmental entity is present in this litigation. Therefore, this factor favors approval.

### 8. Opposition by Class Members

No class member has objected to the settlement[7] and only 9 individuals requested exclusion. (See Butler Decl. ¶¶ 13-14.) This high participation rate favors approval.

## E. Settlement Administration Costs

Plaintiffs seek $11,500 in settlement administration costs, $8,500 less than the $20,000 allowed under the Settlement Agreement. (MFA at 10.) This amount is fair and reasonable for the administrator's efforts outlined in the Butler Declaration.

## F. Attorneys' Fees and Costs

### 1. Fees

Plaintiffs also seek approval of their request for attorneys' fees. (See MAF.) Courts are obliged to ensure the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on the amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011.) "Where a settlement produces a common fund for the benefit of

---

[7] See supra n.6.

the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth, 654 F.3d at 942.  "[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." In re Bluetooth, 654 F.3d at 942 (quoting Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).

A court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method.  Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002).  The court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995).  The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  Next, the court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).[8]  Under the percentage-of-the-fund method, an award of twenty-five percent of the gross settlement amount is the "benchmark" for attorneys' fees calculations.  Powers v. Eichen, 229 F.3d 1249, 1256-57 (9th Cir. 2000).

To determine whether the percentage requested is reasonable, courts may examine several factors, including:

> [T]he extent to which class counsel achieved the results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burden class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

---

[8] In Kerr, the Ninth Circuit adopted the 12–factor test articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), which identified the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  Kerr, 526 F.2d at 70.

<u>In re Online DVD-Rental Antitrust Litig.</u>, 779 F.3d 934, 954-55 (9th Cir. 2015) (internal
quotation mark omitted).  The Ninth Circuit has allowed courts to award attorneys' fees using
the percentage method "in lieu of the often more time-consuming task of calculating the
lodestar."  <u>Bluetooth</u>, 654 F.3d at 942.

Here, Class counsel seeks 33.33% ($183,333.33) of the original general common fund
($550,000).  (MAF at 2.)  The Court considered the results achieved and the risk of litigation
(e.g., the number and quality of Defendants' defenses), as well as the skill required and work
performed to litigate this case.  Class Counsel obtained a settlement that confers a significant
benefit to the Class, particularly in light of the risks involved in this litigation.  The net settlement
available to the class totals approximately $299,400.90, or an average settlement share of
approximately $356.85 per class member based on 839 class participants.  (MAF at 7.)[9]  Class
Counsel contends that the exceptionally high participation rate of class members and recovery in
light of the risks facing the class warrant a 33.33% award.  (<u>Id.</u> at 7-8.)  Furthermore, Class
Counsel asserts this recovery is attributable to their skill and experience as class action litigators.
(<u>Id.</u> at 9 (citing Friedman Fee Decl. ¶¶ 8-13).)  In addition, the Court took into account the
contingent nature of the fee and financial burden on counsel as well as awards made in similar
cases.  These factors, the Court finds, justify an award of 33.33% or $183,333.33 in attorneys' fees.

The Court now turns to the lodestar method as a means of cross-checking the 33.33%
award requested.  Counsel represent their work on the case amounts to $201,049.50 and a total of
approximately 373.7 attorney and staff hours.  (MAF at 12.)  This calculation omits paralegal and
law clerk time for staff at the Law Offices of Todd M. Friedman.  (Friedman Decl. ¶ 18 n.1.)
Class Counsel represent they will have to spend additional time in completing the settlement
approval process and settlement administration, time which has not been included in this lodestar
calculation.  (MAF at 12.)  Thus, the requested fee ($183,333.333) represents a lodestar
multiplier of less than 1.0.  In <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1050-51 (9th Cir.
2002), the Ninth Circuit held the district court did not abuse its discretion when it approved
attorney's fees after applying the lodestar method as a cross-check of the percentage method.
The attorney's fees resulted in a of 3.65 lodestar multiplier in <u>Vizcaino</u>, which the Ninth Circuit
upheld as "appropriate."  <u>Id.</u> at 1051.  The multiplier here is much smaller, and counsel will not
even recover their total asserted lodestar fees.

Here, attorneys Todd Friedman, Adrian Bacon, and Thomas Wheeler billed hourly
hourly rates of $725, $625, and $425, respectively.  (Friedman Fee Decl. ¶ 36.)  The MAF
reflects that attorneys Graham Hollis, Vilmarie Cordero, Caroline Massey, Laura Supanich, and
Nicole Roysdon, and Geoff LaVal billed hourly rates of $825, $700, $490, $415, $600, and $515,
respectively.  (MAF at 12.)

---

[9] The average recovery here is slightly different than what Plaintiffs estimate in their
MAF.  This is because the Court reduces to $5,000 the incentive awards to each Cawthorne and
Valdez.  <u>See infra</u> Part IV.G.  The $10,000 reduction in incentive awards will return to the net
settlement amount.

The Court has reviewed the experience of Friedman, Bacon, and Wheeler and finds their hourly rates to be reasonable.  See Youngevity Int'l, Corp. v. Smith, No. 16-CV-00704-BTM-JLB, 2018 WL 2113238, at *5 (S.D. Cal. May 7, 2018) (citations omitted) ("Courts in this district have held a range of rates from $450-750 per hour reasonable for a senior partner in a variety of litigation contexts and specialties.")  Friedman has been practicing in California since 2001. (Friedman Decl. ¶ 1.)  He has extensive experience litigating class actions in California.  (Id. ¶ 10.)  The Court finds Friedman's $725 hourly rate to be reasonable.  Bacon is the head of litigation at Friedman's firm and has been practicing law since 2011, focusing primarily on class action litigation.  (Id. Decl. ¶ 28.)  Bacon has been approved as class counsel on a variety of cases dating back to 2014.  (Id. ¶ 29.)  The Court finds Bacon's $625 hourly rate to be reasonable. Wheeler graduated from the University of Pennsylvania law school and is an associate at Friedman's firm.  (Id. ¶ 34.)  He has been practicing for at least two years and has worked on class actions during this time.  (Id.)  The Court finds Wheeler's $425 rate to be reasonable.

The Graham Hollis attorneys do not provide sufficient information for the Court to determine whether their asserted hourly rates are reasonable.  In connection with the motion for preliminary approval, Hollis explained that he has been practicing since 1985; Cordero has been practicing since 2006; Massey has been practicing since 2014; and Supanich has been practicing since 2017.  (Hollis Decl. ¶ 37.)  But the Hollis Declaration contains different hourly rates and hours spent than the MAF.  The Hollis Declaration asserts that Mr. Hollis's hourly rate is $825 and that he spent 5.5 hours on this action, but the MAF shows an hourly rate of $800 and that he spent only 1.9 hours on this action.  (Compare Hollis Decl. ¶ 10 with MAF at 12.)  The Hollis Declaration establishes an hourly rate for Cordero at $625 and that she spent 12 hours working on this action, but the MAF shows a $75 increase to $700 per hour and that she spent only 10.6 hours working on this action.  (Compare Hollis Decl. ¶ 10 with MAF at 12.)  There are similar discrepancies between the hourly rates and time billed for Massey and Supanich as well. (Compare Hollis Decl. ¶ 10 with MAF at 12.)  Furthermore, Class Counsel provides no additional explanation as to the experience of Hollis, Cordero, Massey, and Supanich other than their year of admission and a single allegation that they have been appointed class counsel in other actions.  (See Hollis Decl. ¶¶ 15-16, 37, 40.)  Class Counsel similarly only provides the year Roysdon and LaVal were admitted, 2009 and 2011, respectively.  (Friedman Decl. ¶ 20.)  They provide no other information concerning Roysdon or LaVal's experience.  Thus, the Court does not have sufficient information to determine whether the hourly rates for any Graham Hollis attorneys are reasonable.

However, even with these deficiencies in establishing a reasonable hourly rate, the Court still considers the requested fee reasonable after the lode-star cross-check, as Class Counsel seek fees below their asserted lodes-star amounts.  Considering the complexity of the case, the risks involved, and the potential length of litigation, the Court finds the requested fees to be reasonable.  Accordingly, the Court APPROVES the requested $183,333.33 in attorneys' fees.

///
///
///

## 2. Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." Rutti v. Lojack Corp., Inc., No. SACV 06–350 DOC (JCx), 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Class counsel requests $10,000 in costs. (MAF at 15.) Class Counsel's actual costs total $10,204.83, slightly more than the amount requested. (Friedman Decl. ¶¶ 21-22.) An itemized breakdown of the expenses in this case include mediation fees, legal research fees, travel costs, copying, and postage. (Id.) All of these expenses are typically recoverable in litigation. Cf. In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a class action settlement). The Court therefore APPROVES the requested amount for costs.

## G. Incentive Awards

The trial court has discretion to award incentives to the class representatives. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz, 592 F. Supp. 2d at 1329. The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiffs each seek a $10,000 incentive award for their service to the Class. (MAF at 15.) In the Preliminary Approval Order, the Court cautioned the parties that this award is quite steep. (Preliminary Approval Order at 13-14.) The Court is not persuaded that such an award is reasonable under the circumstances here. Plaintiffs each spent about 20-22 hours in connection with this case. (See Cawthorne Decl. ¶ 4; Valdez Decl. ¶ 10, 17.) This included reviewing documents, telephone conversations, exchanging emails, gathering documents, and staying informed as to the mediation and settlement process. (Cawthorne Decl. ¶ 4; Valdez Decl. ¶¶ 8-16.) They also risked paying Defendants' costs if they did not prevail. (Cawthorne Decl. ¶ 5; Valdez Decl. ¶ 4.) Finally, each asserts they face significant risk by publicly filing suit against their employer. (Cawthorne Decl. ¶ 5; Valdez Decl. ¶ 5.) The Court finds this supports a service award, but it does not present circumstances justifying such a steep award. Given Plaintiffs' involvement and assumption of significant risk, the Court finds appropriate an award of $5,000 each. The Court AWARDS $5,000 each to Plaintiffs Cawthorne and Valdez.

///

## V.    CONCLUSION

For the reasons stated above, the Court:

1.    GRANTS final approval of the Settlement Agreement;

2.    AWARDS Class Counsel attorneys' fees in the amount of $183,333.33;

3.    AWARDS Class Counsel costs in the amount of $10,000;

4.    AWARDS $5,000 each to Plaintiffs Cawthorne and Valdez;

5.    ORDERS the payment of $37,500 to the California Labor and Workforce Development Agency;

6.    ORDERS the payment of $11,500 to the claims administrator; and

7.    DISMISSES the Complaint WITH PREJUDICE.

The Court ORDERS such judgment be entered.


**IT IS SO ORDERED.**